No. 48,930

STATE OF KANSAS, *Plaintiff-Appellee,* v. RONALD L. DUNN, *Defendant-Appellant.*

(575 P.2d 530)

Opinion filed February 25, 1978.

*Stephen W. Kessler,* Legal Services for Prisoners, Inc., argued the cause, and was on the brief for the appellant.

*Robert S. Streepy,* assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Joseph P. O'Sullivan,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of two counts of kidnapping (K.S.A. 21-3420). The facts in the case are not disputed. The prosecution was the result of an occurrence within the walls of the Kansas State Industrial Reformatory at Hutchinson on March 10, 1976. On that date the defendant Ronald L. Dunn was serving a sentence for the crime of aggravated juvenile delinquency.

The defendant Dunn and two other inmates entered the office of Ray Atkins, an instructor at the reformatory. Atkins and his secretary, Avanelle Hardesty, were taken and confined as hostages in the office for a period of about five hours. The defendant told Atkins and Mrs. Hardesty that as long as they cooperated they would not be hurt. Both Atkins and Mrs. Hardesty described the defendant as calm and collected. They testified that defendant gave orders to the two other inmates involved. The defendant had numerous telephone calls with various prison officials. On several occasions defendant stated that he was not going to hurt the hostages if his orders were followed. He demanded a car full of gas to be placed in a certain location where the defendant and his companions could enter the car and leave the institution. Dr. Jose Sintos, a medical doctor at the institution who had counseled in the past with the defendant, suggested to defendant that he

release Atkins and Mrs. Hardesty as hostages in exchange for Dr. Sintos and Major Hendry. In reply defendant stated, "No, I know what a good thing I have," indicating that he felt the prison authorities would cooperate more if he had a woman as a hostage. The defendant made it clear that if his demands were not met he would kill the hostages.

The defendant relied upon the defense of insanity. He called to the stand a psychiatrist, Dr. Herbert Modlin of the Menninger Foundation in Topeka, who testified that he had examined the defendant Dunn several months after the incident occurred. He was of the opinion that the defendant had limited mental capacities, was mentally retarded with a low I.Q., and had difficulties in thinking—particularly when under stress. Defendant told Dr. Modlin that he decided if he was to get out of prison he had to take things in his own hands. In Dr. Modlin's view, the defendant got the idea of taking hostages from viewing a television show. In regard to the defendant's mental condition at the time he took and held the hostages, Dr. Modlin testified that the defendant "probably was aware that what he was doing other people would consider wrong, certainly rules breaking, but from his point of view he felt quite justified." Prior to testifying, Dr. Modlin had an opportunity to read the transcripts of defendant's various telephone conversations with prison officials. It was Dr. Modlin's opinion that these telephone conversations would tend to make one believe that defendant was, in fact, very lucid and was in control of his faculties on the day in question. It is obvious why the jury brought in a verdict of guilty on both counts.

The first point raised on the appeal is that the evidence was not sufficient to establish kidnapping under K.S.A. 21-3420(b). K.S.A. 21-3420 provides as follows:

"**Kidnapping.** Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) For ransom, or as a shield or hostage; or

"(b) To facilitate flight or the commission of any crime; or

"(c) To inflict bodily injury or to terrorize the victim or another; or

"(d) To interfere with the performance of any governmental or political function.

"Kidnapping is a class B felony."

The defendant relies upon *State v. Buggs*, 219 Kan. 203, 547 P.2d 720, which held that the word "facilitate" in K.S.A. 21-3420(b) means something more than just to make more conve-

nient. A taking or confining, in order to be said to "facilitate" a crime, must have some significant bearing on making the commission of the crime "easier." If a taking or confining is alleged to have been done to facilitate the commission of another crime, to constitute kidnapping the resulting movement or confinement (*a*) must not be slight, inconsequential and merely incidental to the other crime; (*b*) must not be of a kind inherent in the nature of the other crime; and (*c*) must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection. Relying on *Buggs*, the defendant argues that the evidence of the state does not show that the confinement of the two hostages made the crime of aggravated escape easier to commit, because the confinement actually had the effect of calling attention to the defendant and, in fact, made it more difficult for the defendant and his companions to escape from custody. We find no merit in the defendant's contention.

Defense counsel completely ignores the fact that under K.S.A. 21-3420(*a*) the confining of any person, accomplished by force, threat, or deception, *with the intent to hold such person as a hostage,* constitutes the crime of kidnapping. Here the information alleged in the alternative that the defendant confined the two prison employees with the intention to hold them as hostages *or* to facilitate the commission of the crime of aggravated escape. The evidence is absolutely uncontroverted that the defendant confined Atkins and Mrs. Hardesty, stating that it was his intention to hold them as hostages until his demands for a car and free passage out of the reformatory were complied with. The evidence presented by the state was sufficient to establish that the two victims were confined with the intent to hold such persons as hostages under subparagraph (*a*) and also to facilitate the commission of the crime of aggravated escape under subparagraph (*b*).

The defendant's second point on appeal is that the trial court erred in failing to give to the jury a requested instruction on the crime of unlawful restraint (K.S.A. 21-3424) as a lesser included offense under kidnapping. K.S.A. 21-3424 defines unlawful restraint as knowingly and without legal authority restraining another so as to interfere substantially with his liberty. No specific intent is required. It is the position of the defendant that the

psychiatric testimony of Dr. Herbert Modlin raised a fact issue as to defendant's mental capacity to form the requisite specific intent to hold the persons confined as hostages or to facilitate flight or the commission of a crime required by K.S.A. 21-3420. Defendant argues that, because of his mental illness, he could not have had the specific intent to hold Atkins and Mrs. Hardesty for the purposes set out in the kidnapping statute and that the jury, if given the opportunity, might have convicted him of the lesser crime of unlawful restraint. We, of course, have adopted the rule that the failure to instruct on a lesser included offense is error when the omitted instruction is required by the evidence and under the circumstances the defendant might reasonably have been convicted of the lesser offense had the instruction been given. (*State v. Masqua,* 210 Kan. 419, 502 P.2d 728, *cert. den.* 411 U.S. 951, 36 L.Ed.2d 413, 93 S.Ct. 1939.)

We have concluded, however, that there was not sufficient evidence introduced at the trial to raise a legitimate factual issue as to whether defendant had the capacity to form the requisite specific intent so as to require an instruction on unlawful restraint. As pointed out above, although Dr. Herbert Modlin did testify that the defendant had limited mental capacities and some difficulties in thinking, especially when under stress, it was the doctor's opinion that the defendant was probably aware that what he was doing other people would consider wrong and certainly that he was violating the rules. Dr. Modlin further testified that the transcript of defendant's telephone conversation would lead one to believe that the defendant was lucid and was in control of his faculties on the day in question. The testimony of the state's witnesses as to defendant's demeanor was undisputed that the defendant knew exactly what he was doing, was at all times calm and collected, gave orders to the other two inmates, specifically referred to Atkins and Mrs. Hardesty as hostages, and demanded a car for the purpose of escaping the institution. On the basis of this undisputed evidence we have no hesitancy in concluding that the evidence did not justify an instruction on the lesser offense of unlawful restraint (K.S.A. 21-3424).

The defendant's final point is that the trial court erred in failing to give a limiting instruction on the state's evidence that at the time the hostages were taken, defendant was serving time in the reformatory for the offense of aggravated juvenile delinquency.

This evidence was an important part of the factual circumstances existing when the hostages were taken by the defendant. Such evidence was admissible independently of K.S.A. 60-455 and therefore a limiting instruction was not required. (*State v. Smolin,* 221 Kan. 149, 557 P.2d 1241; *State v. Ralls,* 213 Kan. 249, 515 P.2d 1205.)

The judgment of the district court is affirmed.