No. 55,138

STATE OF KANSAS, *Appellee,* v. LOUIS CHATMON, *Appellant.*

(671 P.2d 531)

Opinion filed October 21, 1983.

*Carl E. Cornwell,* of Kansas City, argued the cause and was on the brief for the appellant.

*John McNally,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Nick A. Tomasic,* district attorney, and *Paul Theroff,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: Louis Chatmon, the defendant, appeals from convictions of aggravated kidnapping, K.S.A. 21-3421, and battery, K.S.A. 21-3412, after a jury trial. He was sentenced pursuant to

the habitual criminal act to three life sentences to run concurrently for the aggravated kidnapping, and was sentenced to a maximum of six months in jail for the battery.

On the evening of May 28, 1981, Ms. M. met several friends at the Terrace Club in Kansas City, Kansas. After a half hour Ms. M. and four others went to a bar called the Pawn Shop where they remained for approximately 2½ to 3 hours. Then Ms. M. and three of the group went to the Partners Bar. The group had one drink at Partners and left at approximately 10:15 p.m. Ms. M. and Joe Meredith were both hungry and agreed to eat at the Wyandotte Cafe. Meredith was to drop one of the group off at the friend's home and then meet Ms. M. at a Kentucky Fried Chicken restaurant at 110th and State Street. Ms. M. would then follow Meredith to the Wyandotte Cafe where they would eat.

Ms. M. had trouble finding the Kentucky Fried Chicken restaurant. Believing she had gone too far down State Street, she turned her car around. While returning to 110th Street, a car quickly moved in front of her. The driver turned on his car's blinking lights and waved Ms. M. over to the side of the road. The defendant got out of his car, walked back to Ms. M.'s car, and identified himself as a policeman, quickly showing his billfold. Defendant said he stopped her because she was swerving across the road. Ms. M. replied she was looking for the Kentucky Fried Chicken restaurant and perhaps was not being attentive to her driving. The defendant offered to lead her to the restaurant.

When Ms. M. and the defendant arrived at the chicken restaurant, Meredith and a state trooper were already there. The trooper had stopped to question Meredith because an adjacent liquor store had been burglarized several times in the recent past. The defendant had a short conversation with Meredith concerning the trooper's presence. Ms. M. warned Meredith that the defendant was a policeman. Meredith left for the Wyandotte Cafe in his car with Ms. M. following him in her car, and the defendant followed Ms. M. in his car.

After several turns, the defendant passed Ms. M. and positioned himself between Meredith's car and Ms. M.'s car. Ms. M. tried to follow Meredith's car but eventually made a wrong turn and ended up behind only the defendant's car. She followed the defendant until he waved her over. The defendant departed his car, went back to Ms. M.'s car, got in on the passenger's side, and

told her to drive. Defendant said he would direct her to Meredith's house, having found out where Meredith lived when he spoke with Meredith at the restaurant parking lot. Stopping at a stop sign, Ms. M. told the defendant that she was doing fine and wanted him to get out of her car. The defendant said he was not getting out. Defendant took off Ms. M.'s glasses and struck her twice across the face, once in the eye, and once near the chin. Ms. M. grew hysterical and the defendant grabbed her by the throat and pushed her down between the bucket seats. The defendant started to strangle her and stated he wanted her to calm down, and that he would let her up if she would take him anywhere he wanted to go. The defendant said he was going to have sex with her. Ms. M. tried to scratch the defendant's face and after a short struggle, the defendant let her up. The defendant then gave Ms. M. her glasses because she could not see to drive without them.

While Ms. M. drove, the defendant began drinking liquor from a bottle. Defendant stated several times he was going to have sex with Ms. M. At one point defendant ordered her to stop the car so he could relieve himself. When Ms. M. refused to take the keys out of the ignition, the defendant tried to pull them out but had trouble removing the keys. The defendant hit Ms. M. across the face, forcing her to give him the keys. While the defendant was outside the car, Ms. M. retrieved her extra set of keys from her purse in the back seat. As she started the ignition and began to move away, the defendant was able to grab the door handle and jump back into the car. The defendant was angry, but did not strike Ms. M.

Later they stopped again so the defendant could relieve himself. A police car pulled up behind them. The defendant threatened to shoot the policeman and Ms. M. if they were stopped. They were not stopped by the police officer as they drove onto I-70. Exiting I-70 at the Turner exit, Ms. M. told the toll collector the defendant was a policeman and needed a cab. The defendant paid the toll and said Ms. M. would take him.

Shortly after leaving the Turner exit, the defendant told Ms. M. to pull over. He then forced her to kiss him, fondled her breasts, and unbuttoned her blouse. Ms. M. pushed him away and buttoned her blouse. The two talked there for approximately 20 minutes.

The defendant then directed Ms. M. back onto State Street. Between 3:00 and 3:30 a.m., Ms. M., needing to use a restroom, stopped at a gas station. At the gas station, Ms. M. told the defendant she was not going to take him anywhere else. She asked the gas station attendant to call the defendant a cab. A man filling up his car asked Ms. M. if the defendant was bothering her. When the defendant walked over to the man to respond, Ms. M. told the attendant she had been kidnapped and to call the police. The police arrived soon after and took both Ms. M. and the defendant to a police substation. Ms. M. estimated she was with the defendant for 3½ to 4 hours.

Ms. M. went to a hospital at noon on May 29, 1981, and photographs were taken of her injuries. At the trial the examining doctor testified Ms. M. had soft tissue injuries with bruises about her mouth, some hemorrhaging in her left eye and bruises on her left chest, left arm, and the left side of her back. The doctor testified the eye injury was a severe injury, and the bruises were severe, being quite swollen and discolored. Ms. M. was having spasms of the jaw muscles and could not fully open her mouth when examined by the doctor.

The defendant testified he never hit Ms. M. He said he gave her directions when she waved him down and then followed her to the Kentucky Fried Chicken restaurant after giving the directions. Defendant left the restaurant behind Meredith and Ms. M. After making a turn he realized Ms. M. was following him. Ms. M. pulled in front of him and waved for him to stop. Ms. M. stated she needed gas and asked him to ride with her to help find a gas station. They talked, rode around, and eventually ended up at the gas station where the police were called.

The defendant raises five issues on appeal.

The defendant contends the court erred in failing to instruct the jury on kidnapping, K.S.A. 21-3420, a lesser included offense of aggravated kidnapping, K.S.A. 21-3421. K.S.A. 21-3107(3) states:

"In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to."

(The statute was amended by the 1983 legislature. The amended

section makes a lesser included offense instruction unnecessary if the defendant objects to the instruction. L. 1983, ch. 107, sec. 1.)

The duty to instruct on a lesser included crime arises only when there is evidence under which the defendant might have been reasonably convicted of the lesser included offense. *State v. Everson,* 229 Kan. 540, 542, 626 P.2d 1189 (1981). The test for giving the lesser included instruction is not whether any theory arises under which a person could be found guilty or innocent, but whether there is sufficient evidence to support the giving of the instruction of the lesser charge. *State v. Garcia,* 233 Kan. 589, Syl. ¶ 8, 664 P.2d 1343 (1983). The evidence supporting the lesser offense, however, need not be overwhelming. The instruction should be given even if the evidence of the lesser included offense is weak and inconclusive or consists solely of the defendant's testimony. *State v. Sullivan & Sullivan,* 224 Kan. 110, 120, 578 P.2d 1108 (1978).

Kidnapping under proper circumstances is a lesser included offense of aggravated kidnapping; aggravated kidnapping (K.S.A. 21-3421) requires one extra element beyond kidnapping (K.S.A. 21-3420). Aggravated kidnapping requires that bodily harm be inflicted upon the person kidnapped. The significant policy behind the establishment of the crime of aggravated kidnapping is to deter the kidnapper from inflicting harm upon the victim, to encourage the victim's release unharmed.

The defendant testified that no kidnapping occurred and that he did not strike Ms. M. The defendant's testimony would not support a kidnapping conviction. A conviction for either kidnapping or aggravated kidnapping would rest almost solely on Ms. M.'s testimony. The question of whether bodily harm was inflicted must be answered by her account of the events. Rephrased, the question is whether the injuries Ms. M. described constitute bodily harm.

Several cases have addressed bodily harm and the propriety of instructing the jury on kidnapping as a lesser included offense of aggravated kidnapping. In *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375 (1975), the trial court did not instruct the jury on kidnapping as a lesser included offense of aggravated kidnapping. The court held bodily harm was inflicted upon the seven-year-old kidnap victim when the defendant twice threw her into

a river. The court determined the act of throwing the child into the river was "bodily harm," as a matter of law. 217 Kan. at 713. Bodily harm was defined as " 'any touching of the victim against [the victim's] will, with physical force, in an intentional, hostile and aggravated manner.' " 217 Kan. at 714. Justice Prager dissented, believing the record raised a factual issue as to whether or not bodily harm was inflicted upon the person kidnapped. He argued bodily harm requires injury and the record did not conclusively establish that the victim was injured. See *State v. Sanders,* 225 Kan. 156, 587 P.2d 906 (1978) (jury instructed on lesser included offense of kidnapping).

In *State v. Chears,* 231 Kan. 161, 165, 643 P.2d 154 (1982), the court held forcing a kidnap victim to commit sodomy (aggravated sodomy) constituted the infliction of bodily harm. The defendant admitted he robbed the victim, but claimed he was not involved in sodomizing the victim. There was held to be no need to instruct the jury on kidnapping. If the victim's version of events was accepted, the defendant could not have reasonably been convicted of kidnapping. The defendant would either be convicted of aggravated kidnapping or nothing at all. See Annot., 11 A.L.R.3d 1053.

The defendant struck Ms. M. across the face twice, and grabbed her throat when she became hysterical, and started to strangle her. He later hit her across the face again. A doctor testified her injuries were of a severe nature. Here the trial court reasoned either an aggravated kidnapping charge was proper or there should be no conviction as to that charge. The defendant denied a kidnapping occurred and that he had struck Ms. M. The trial court does not err in refusing to give an instruction on the lesser included offense of kidnapping where there is no evidence to support the finding of a lesser included offense. Under the factual situation of this case the defendant was either guilty of aggravated kidnapping or not guilty of that offense. The trial court's refusal to give the instruction on kidnapping as a lesser included offense of aggravated kidnapping in this case was proper.

The defendant claims that the trial court erred in allowing a portion of the State's cross-examination of him. We disagree.

During the State's cross-examination of the defendant, the defendant explained his version of his conduct at the Kentucky

Fried Chicken parking lot, when Ms. M., Meredith, and the highway patrol officer were present. The defendant stated: "I was the only black guy there and I know what can happen under the circumstances like that." Then the prosecutor questioned the defendant as to that statement. The defendant while being questioned brought to the attention of the jury several prior incidents that were otherwise inadmissible.

During the cross-examination of the defendant, counsel for the defendant objected because the evidence was irrelevant. Relevant evidence is evidence having any tendency in reason to prove any material fact and the determination of relevancy is a matter of logic and experience. *State v. Norman*, 232 Kan. 102, Syl. ¶ 4, 652 P.2d 683 (1982). Subject to certain exclusionary rules the admission of evidence lies within the sound discretion of the trial court. *State v. Norman*, 232 Kan. at 108. The defendant explained his conduct at the chicken restaurant with Ms. M. because he had had unfortunate experiences with police in the past. The prosecutor delved into what those past experiences had been. The defendant mentioned past charges against him without being specifically asked about them. The specific question about his criminal record was properly objected to. The defendant's motivation in stopping at the restaurant was relevant. The State could, by questioning the defendant's motivation, attack the credibility of the defendant's testimony on a matter the defendant had testified to previously in his direct examination. Kansas statutes, *i.e.* K.S.A. 60-421, 60-447 and 60-455, govern admission of evidence of past conduct or convictions. The purpose of these statutes is to permit a defendant to testify in his own behalf without having his history of past misconduct paraded before the jury. A defendant is entitled, like any other witness, to let the jury know who he is so that it may properly fit him into the pattern of events. When the testimony of the defendant goes beyond those bounds of the statutory protection and makes reference to specific prior incidents, he forgoes the protection of the statutes. When the defendant opens a subject on direct or cross-examination, the State may develop and explore various phases of that subject.

The defendant argues his battery conviction should be reversed because the trial court's instruction on battery was clearly erroneous. The defendant requested the battery instructions

given by the trial court as a lesser included offense of attempted rape. Defendant relied upon *State v. Arnold,* 1 Kan. App. 2d 642, 573 P.2d 1087 (1977), which stated the battery in that case was a lesser included offense of an attempted rape. The defendant requested the battery instruction, believing the crime was a lesser included offense of the charged attempted rape. In *State v. Arnold,* 223 Kan. 715, 576 P.2d 651 (1978), the Supreme Court reversed the Court of Appeals, holding battery was not a lesser included offense of attempted rape.

The instruction requested by the defendant certainly was not objected to by the defendant. Normally, he could not predicate reversible error on a question not raised at the first instance at the trial level. *State v. Trujillo,* 225 Kan. 320, 324, 590 P.2d 1027 (1979). However, if the instruction is clearly erroneous then an appellate court on review can entertain the question in the first instance. There is no doubt that if the trial court had not instructed on the offense of battery as a lesser included offense of attempted rape, the defendant could not have been convicted of the offense of battery.

The State claims that the defendant cannot ask for appellate review of an error in giving an instruction which he himself requested. The doctrine of invited error has been recognized in criminal cases in Kansas for some time. One who by his own acts invited error is in no position to complain or take advantage of it on appeal. *State v. Thomas,* 220 Kan. 104, 106, 551 P.2d 873 (1976). The Kansas cases on invited error involve situations where the invited error was as to testimony. Here the trial court allowed the jury to consider the defendant's guilt of a crime not charged by the State and an offense that was not a lesser crime of a charged offense.

The trial court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. K.S.A. 22-3201(4). In this case the State did not seek to amend the information to include the allegation of battery. The defendant attempted to create battery as a lesser included offense of attempted rape and confer jurisdiction of the offense of battery upon the trial court.

In a criminal action pending in the district court, the information or indictment is the jurisdictional instrument upon which

the accused stands trial. Here the trial court had jurisdiction over the offense of attempted rape charged in the information — but it had no jurisdiction over battery — the question which the jury's judgment assumed to decide. Having no jurisdiction over the offense of battery the trial court had no power to pronounce the sentence imposed for battery.

A conviction upon a charge not made in the information or properly brought before the court is a clear denial of due process under the Fourteenth Amendment to the Constitution of the United States. In a criminal action the trial court must not only have jurisdiction over the offense charged, but it must also have jurisdiction of the question which its judgment assumes to decide. *State v. Minor,* 197 Kan. 296, Syl. ¶ 4, 416 P.2d 724 (1966). A judgment for the offense of battery where the court is without jurisdiction to decide the issue is void.

The defendant moved for a judgment of acquittal of the charge of aggravated kidnapping after the State rested its case pursuant to K.S.A. 22-3419(1). The motion attacks the sufficiency of the evidence in support of guilt. *State v. McGhee,* 226 Kan. 698, 700, 602 P.2d 1339 (1979).

" 'A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt.' " *State v. Hill,* 233 Kan. 648, 651, 664 P.2d 840 (1983).

Aggravated kidnapping is defined by K.S.A. 21-3421:

"Aggravated kidnapping is kidnapping, as defined in section 21-3420, when bodily harm is inflicted upon the person kidnapped."

The kidnapping was made easier, according to the evidence stated earlier, because of a deception, the defendant's impersonation of a police officer. Kidnapping may be perpetrated through a deception. *State v. Colbert,* 221 Kan. 203, 557 P.2d 1235 (1976); *State v. Holt,* 223 Kan. 34, 574 P.2d 152 (1977). K.S.A. 21-3110(5) defines deception as "knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact."

The defendant was found not guilty of attempted rape by the jury and argues, therefore, that there was no intent to facilitate the crime of rape or to terrorize the victim before the kidnapping, one of which must be found by the trier of fact for a conviction,

according to the instruction. Attempt requires an overt act toward the perpetration of a crime. K.S.A. 21-3301. The jury apparently did not find the appellant committed the requisite overt act. But, the jury still concluded the defendant kidnapped Ms. M. with the intent to facilitate a rape. Kidnapping to facilitate a crime must have a significant bearing on making the commission of the crime easier. *State v. Buggs,* 219 Kan. 203, Syl. ¶ 9, 547 P.2d 720 (1976). Getting the victim alone in a car away from other people would facilitate the commission of a rape. In this case, the defendant stated his intention to have sex with Ms. M. His intent at the time of the kidnapping was to facilitate the rape of Ms. M. A defendant does not always have to be convicted of the crime he intends to facilitate by an abduction to be convicted of kidnapping. See *State v. Dunn,* 223 Kan. 545, 575 P.2d 530 (1978).

The defendant contends Ms. M.'s testimony contained factual inconsistencies and was unbelievable. The credibility of witnesses should be left to the jury to determine. *State v. Douglas,* 230 Kan. 744, 746, 640 P.2d 1259 (1982). The evidence viewed in light most favorable to the prosecution convinces this court that a rational factfinder could have concluded the appellant was guilty beyond a reasonable doubt. *State v. Douglas,* 230 Kan. at 745. The trial court was correct in denying the motion to acquit.

The defendant states this case should be remanded to the district court for a hearing on a motion to dismiss. A pro se motion was filed July 6, 1981, a day before the preliminary hearing was held in this case. No hearing was ever conducted on the motion and the issues in the motion were not raised the day of the preliminary hearing. On April 25, 1983, five months after the notice of appeal was filed, the defendant filed a motion to remand the case for a hearing on the motion to dismiss.

This court has stated:

"Sufficiency of the preliminary hearing including its timeliness may be challenged only by motion to dismiss under K.S.A. 22-3208. [Citation omitted.] A motion under K.S.A. 22-3208 to dismiss or grant appropriate relief must be filed no later than 20 days after arraignment. Failure to raise a question as to the sufficiency of the preliminary hearing by such a motion constitutes a waiver and precludes review on appeal." *State v. Weigel,* 228 Kan. 194, 201, 612 P.2d 636 (1980).

In this case the defendant filed a motion but did not bring the issue of the preliminary hearing's timeliness to the court's attention prior to the preliminary hearing, or raise the issue at any

time afterward until filing a motion to remand at the appellate level. The defendant is required to have argued the motion attacking the timeliness of the preliminary hearing immediately before the preliminary hearing or not later than 20 days after the arraignment. The fact that the issue was not raised until after the appeal was commenced is a waiver of that issue.

The judgment of conviction of aggravated kidnapping is affirmed. The judgment of the conviction for battery is reversed. The case is remanded to the trial court for modification of the sentence consistent with this opinion.