No. 66,897

STATE OF KANSAS, *Appellee,* v. STEVE HAMMOND, *Appellant.*

(837 P.2d 816)

Opinion filed July 10, 1992.

*Wendy L. Rhyne Slayton,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Francis E. Meisenheimer*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This criminal case concerns the issues of: (1) multiplicity of convictions for aggravated kidnapping and aggravated robbery; (2) kidnapping as a lesser included offense of aggravated kidnapping; (3) election of theories as to aggravated robbery; and (4) jurisdiction of the trial court over a defendant who had been transported under court order from a penal facility in another county to the county where the crime was committed.

Steve Hammond appeals from his convictions by a jury of one count of aggravated kidnapping (K.S.A. 21-3421), one count of kidnapping (K.S.A. 21-3420), one count of aggravated robbery (K.S.A. 21-3427), and one count of aggravated burglary (K.S.A. 1991 Supp. 21-3716).

Our jurisdiction is under K.S.A. 1991 Supp. 22-3601(b)(1) (an appeal from a conviction of a class A felony).

We find no error and affirm.

### Facts
#### The Victims' Testimony

Cindy Manjeot testified that on November 29, 1988, at approximately 1:30 a.m., she and her husband Monte were in bed asleep in their home in Murdock, Kansas, when the exterior door to their residence was kicked in. Two male figures whose faces were covered with panty hose appeared at the foot of the bed. The two men wanted the Manjeots' gold coins. The heavier of the two men moved onto the bed, telling the Manjeots to lie on their stomachs with their hands behind their backs. He then bound their wrists with duct tape. After the Manjeots were tied up, the men ransacked the house. The thinner one (Hammond) returned to the bedroom and showed the Manjeots their pistol, which he had found. He later indicated that he had found the gold coins.

Cindy was able to see the men by turning her head sideways and viewing the mirror in the headboard of the bed. She stated that the heavier man had a beard and the thinner one had shoulder length, pulled-back hair. Cindy further testified that when the thinner man returned to the bedroom with the coins, Monte

freed himself and was in the process of standing up to confront the thinner man when he was struck in the face with the pistol butt. Monte fell back on the bed, bleeding profusely. Monte was retied. The thinner man cocked and aimed the pistol at Monte, stating that he "wanted to kill him really bad." One of the men (Cindy thought it was the heavier one,) stated that "that's not why they were there."

The two men then took Monte into the bathroom and tied him to the shower. The heavier man returned to the bedroom and rolled Cindy up in a king-size comforter, wrapping duct tape around her.

The intruders wrapped stolen items in an electric blanket. As they were leaving, the thinner man was carrying the electric blanket and the pistol. He told Cindy to give them 15 minutes and not to call the police because "if he was going to do the time he was going to do the crime."

During the entire episode, the Manjeots' three young children were asleep in a second bedroom. After the intruders left, Cindy hopped to the children's room and woke her oldest daughter, who untied her. Cindy then untied Monte and called the police. Monte was taken to a doctor after the police arrived.

Monte's testimony was substantially similar to Cindy's. He testified that he suffered a broken nose during the robbery. Additionally, Monte testified that he knew an individual named Dennis Ownbey who had been to the Manjeot residence, and who knew Monte had the coins.

### Accomplice Testimony

Dennis Ownbey testified for the State. Ownbey knew the Manjeots and had been to their home before the robbery occurred. Ownbey testified that he told Hammond and John Dietrich (identified as the heavier intruder) that the Manjeots had a coin collection. Hammond, Dietrich, and Ownbey planned the robbery. Ownbey drew a floor plan of the Manjeot house.

Ownbey stated that he drove Hammond and Dietrich to Murdock and dropped them off approximately one block from the Manjeot residence. Ownbey did not go in the residence because the Manjeots would have recognized him. Hammond and Dietrich were wearing gloves and had panty hose to put over their heads.

According to Ownbey, after dropping off Hammond and Dietrich, he drove approximately a mile south of Murdock and waited. Hammond and Dietrich returned to the car with the stolen property, including guns wrapped in a blanket, coins in a tin box, cigarettes, and marijuana. Hammond told Ownbey that Hammond had hit Monte because Monte would not stay down and that he (Hammond) would have probably killed Monte if Dietrich had not been there. Ownbey further testified that he and Dietrich sold the coins at coin shops in Wichita and in Oklahoma City.

Ownbey further testified that he and another individual were stopped the night after the robbery while driving in Wichita. The Wichita police searched the car, confiscating a shotgun and a knife. Ownbey identified the shotgun and the knife as items that were stolen from the Manjeot house.

Ownbey pled guilty to robbery and aggravated burglary.

John Dietrich also testified for the State. His testimony concerning the events leading up to and occurring in the Manjeot house was consistent with the other fact witnesses.

Dietrich pled guilty to two counts of robbery and one count of aggravated burglary.

Dr. Lester W. Donley, an osteopathic physician, testified that he examined Monte on November 29, 1988, in the emergency room of the Kingman Community Hospital. Monte's nose was broken. His eyes, nose, and upper lip were swollen.

### Kidnapping and Aggravated Robbery—Multiplicity

Hammond contends that his convictions for aggravated kidnapping and aggravated robbery are multiplicitous under *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976). He asserts that the State's theory of the aggravated kidnapping was that Hammond took and confined Monte by force or threat with the intent to hold Monte to facilitate the aggravated robbery. Hammond argues that the only force inflicted on Monte, striking him in the nose, was incident to and inherent in the aggravated robbery. According to Hammond, a separate aggravated kidnapping was not committed.

The State reasons that the Manjeots' confinement was not incident to and inherent in the aggravated robbery. The robbery

could have been committed without binding the Manjeots with tape. The State asserts that: (1) the confinement of the Manjeots made the commission of the aggravated robbery substantially easier and the risk of detection substantially less; and (2) because each of the crimes of aggravated kidnapping and aggravated robbery requires proof of facts not required in proving the other, the crimes do not merge. See *State v. Zamora,* 247 Kan. 684, 693-94, 803 P.2d 568 (1990).

In *State v. Buggs,* the defendants argued that their convictions for kidnapping merged with the crimes of robbery and rape because the movement and confinement of the victims were merely incidental to the crimes of rape and robbery. 219 Kan. at 209. We rejected defendant's contention and stated the following rule to determine whether the confinement to facilitate the commission of another crime constituted a separate act of kidnapping:

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

(*b*) Must not be of a kind inherent in the nature of the other crime; and

(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. 203, Syl. ¶ 10.

Applying the *Buggs* rule to the case at bar, Hammond's conduct constituted a separate crime of aggravated kidnapping. The Manjeots were first confined and bound while in their bed. Later, Cindy was bound in a comforter and Monte was moved to the bathroom and tied to the shower. The robbery could have been committed without the binding. Binding made the robbery easier to commit because it lessened the Manjeots' ability to take action while the robbers sought the property they intended to steal. Additionally, binding and confining the Manjeots lessened the risk of detection because it slowed the Manjeots from pursuing the robbers and from obtaining help from law enforcement authorities.

Hammond also argues that the charges are multiplicitous because there was only one act of violence.

The trial court instructed on aggravated robbery that the defendant was armed with a deadly weapon and on aggravated kidnapping that bodily harm was inflicted upon Monte Manjeot.

Aggravated robbery is a robbery committed by a person who is *either* armed with a deadly weapon *or* inflicts bodily harm upon any person. K.S.A. 21-3427. Hammond seems to be implicitly arguing that the bodily harm inflicted on Monte is an element of both aggravated kidnapping and aggravated robbery. In the case at bar, the State elected and the jury was instructed on the theory that a deadly weapon was used to satisfy the additional element required in an *aggravated* robbery. It was not necessary for the jury to find that bodily harm was inflicted on Monte to find Hammond guilty of aggravated robbery. The jury had to find Hammond was armed with a deadly weapon. It was necessary to find that bodily harm was inflicted on Monte to find Hammond guilty of aggravated kidnapping. The use of a deadly weapon was not an element in the charge of aggravated kidnapping. Therefore, each charge required factual proof not required in proving the other. The convictions of aggravated kidnapping and aggravated robbery are not multiplicitous.

Further, Hammond has cited no cases, nor has our research identified any cases, which hold that aggravated robbery and aggravated kidnapping are multiplicitous when both charges require proof that the victims suffered bodily harm.

### Kidnapping as a Lesser Offense of Aggravated Kidnapping

Hammond asserts that the trial court should have instructed on kidnapping as a lesser included offense of aggravated kidnapping. Hammond argues that the jury could have found that the bodily harm, Monte's broken nose, was inflicted during the course of robbery and not during the kidnapping; consequently, the jury should have been instructed on simple kidnapping.

The State contends that there is no evidence to support an instruction on the lesser offense of kidnapping. The evidence is clear and uncontroverted that Monte suffered bodily harm as a result of being struck by Hammond.

Under K.S.A. 21-3107(3), the trial court has an affirmative duty to instruct on lesser included offenses established by the evidence. The duty arises only when there is evidence under which

the defendant may be reasonably convicted of the lesser included offense. *State v. Bishop,* 240 Kan. 647, 654-55, 732 P.2d 765 (1987).

Kidnapping is a lesser included offense of aggravated kidnapping under proper circumstances. Aggravated kidnapping requires the additional element beyond kidnapping that bodily harm be inflicted upon the victim kidnapped. K.S.A. 21-3421. *State v. Chatmon,* 234 Kan. 197, 201, 671 P.2d 531 (1983). Where evidence of bodily harm exists, an instruction on the lesser included offense of simple kidnapping is unnecessary. 234 Kan. at 202.

In the case at bar, the uncontroverted evidence showed that Hammond struck Monte, breaking Monte's nose; therefore, the necessary bodily harm element was satisfied for aggravated kidnapping. The trial court did not err in failing to instruct on simple kidnapping.

Hammond's argument that the jury could have found that the bodily injury occurred during the aggravated robbery and not during the aggravated kidnapping is not persuasive. Hammond cites no authority to support his position. We reject his argument for two reasons. *First,* the State's theory of aggravated robbery was that Hammond was armed with a deadly weapon rather than that bodily harm was inflicted on Monte. *Second,* although the aggravated robbery and aggravated kidnapping were not multiplicitous and did not merge, the robbery occurred during the confinement which constituted the kidnapping. The bodily harm to Monte occurred both during the aggravated robbery and the aggravated kidnapping. Therefore, the jury could not have determined that the bodily harm occurred solely during the aggravated robbery.

### Election of Theories of Aggravated Robbery

The State charged aggravated robbery in Count I of the amended information, alleging Hammond took "property from the person or presence of . . . Cindy Manjeot *or* Monte Manjeot . . . ." (Emphasis added.)

The trial court instructed the jury that it must be proved "[t]hat the defendant intentionally took property from the person and presence of Cindy Manjeot *and* Monte Manjeot." (Emphasis added.)

Hammond alleges that the trial court failed to require the State to elect whether it was submitting the charge to the jury on the theory of aggravated robbery of Cindy Manjeot or of Monte Manjeot. Therefore, it is impossible to determine whether the jury found an aggravated robbery of Cindy or Monte occurred. Hammond argues he was denied due process because his right to a unanimous verdict was denied. Hammond reasons that some of the jurors may have found him guilty of taking property from the presence of Cindy while others may have found him guilty of taking property from the presence of Monte.

The State alleges it charged Hammond with only one count of aggravated robbery of Cindy or Monte because charging a separate count of aggravated robbery for each would be multiplicitous, citing *State v. McQueen & Hardyway*, 224 Kan. 420, 430-31, 582 P.2d 251 (1978) (multiple offenses cannot be carved out of a single robbery). The State further asserts that, as instructed by the trial court, the jury was required to and did find that property was taken from the person and presence of *both* Cindy and Monte. Thus, Hammond was not denied the right to a unanimous jury verdict.

The trial court has discretion in giving instructions to the jury and, on appeal, instructions should be approved if they properly and fairly state the law as applied to the facts. *State v. Armstrong*, 238 Kan. 559, 563-64, 712 P.2d 1258 (1986).

"Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." K.S.A. 21-3426. Aggravated robbery, as charged by the State, is robbery committed by a person armed with a dangerous weapon. K.S.A. 21-3427.

The trial court's instruction in the case at bar was proper. It fairly stated the law as applied to the facts. The evidence at trial revealed that property was taken from the presence of both Cindy and Monte. There was no evidence that the property was taken from the person or presence of Cindy or Monte singularly. Cindy and Monte were together except when Monte was moved and tied to the shower. The trial court instructed that the jury must find that property was taken from the person and presence of Cindy *and* Monte. The jury so found. Hammond was not denied his right to a unanimous verdict.

Hammond.did not object to the instruction on aggravated robbery. A party may not assign as error the giving of an instruction unless an objection stating specific grounds is made before the jury retires. Absent such an objection, our review is limited to a determination of whether the instruction is clearly erroneous. An instruction is clearly erroneous when a reviewing court reaches a firm conviction that if the trial error had not occurred, there was a real possibility the jury would have returned a different verdict. *State v. Wilson,* 247 Kan. 87, 94-95, 795 P.2d 336 (1990). The aggravated robbery instruction was not clearly erroneous. No error was committed by the trial court in instructing the jury on aggravated robbery.

### Jurisdiction in Kingman County

Hammond filed a motion to dismiss the complaint, alleging that the trial court lacked jurisdiction because he was arrested illegally. Hammond argued that he was arrested in Reno County when he was taken into custody by Kingman County Sheriff Bayack.

At the hearing on the motion to dismiss, Bayack testified that Hammond was incarcerated at the Hutchinson Correctional Facility in Reno County. The sheriff obtained an order from the Kingman County District Court to transport Hammond from the correctional facility to Kingman County. Bayack called the facility and arranged a specific time to pick Hammond up. Hammond was driven across the Kingman County line, handed the arrest warrant, and read his rights. Hammond declined to make a statement. The State argued that the arrest was lawful. In the alternative, the State asserted that even if the arrest was illegal, a dismissal is not required absent a showing of prejudice to Hammond.

The trial court, in denying the motion to dismiss, found the arrest lawful and reasoned that even if the arrest was illegal, there was no evidence that Hammond's rights had been prejudiced. Hammond refused to make a statement, and no physical evidence was recovered in the movement from the penal facility to Kingman County.

Hammond contends that he was arrested in Reno County when he was taken into custody by the Kingman County Sheriff. According to Hammond, Sheriff Bayack had no authority under

K.S.A. 22-2401a(1) to arrest him outside of Kingman County. Hammond argues that because his arrest was illegal, the charges against him must be dismissed, citing *State v. Hennessee*, 232 Kan. 807, 658 P.2d 1034 (1983) (affirmed trial court's dismissal of the complaint against defendant because arresting sheriff acted beyond his authority in arresting defendant outside sheriff's county).

The State counters that Hammond was not arrested until the arrest warrant was executed in Kingman County; therefore, Hammond's arrest was not illegal. The State reasons that even if the arrest were illegal, Hammond's conviction need not be overturned because an unlawful arrest alone does not deprive the trial court of jurisdiction.

In the case at bar, no Reno County law enforcement agency requested assistance from Sheriff Bayack, nor was Bayack in fresh pursuit. K.S.A. 22-2401a(1). Bayack had no law enforcement authority in Reno County. If he "arrested" Hammond in Reno County, the arrest was unlawful.

K.S.A. 1991 Supp. 22-2202(4) defines "arrest" as "the taking of a person into custody in order that the person may be forthcoming to answer for the commission of a crime." " 'Custody' means the restraint of a person pursuant to an arrest or the order of a court or magistrate." K.S.A. 1991 Supp. 22-2202(9).

Hammond was already in lawful custody of the Secretary of Corrections and was being transported to Kingman County pursuant to a lawful court order. Upon arriving in Kingman County, Sheriff Bayack executed the arrest warrant. The arrest was not illegal. Therefore, *Hennessee* is distinguishable and does not apply. Furthermore, jurisdiction of a court to try a person accused of a crime is not divested because the accused may have been unlawfully arrested. An unlawful arrest, without more, does not give the accused immunity from prosecution nor provide a defense to a valid conviction. *State v. Weis*, 246 Kan. 694, 697, 792 P.2d 989 (1990).

### Sentencing

Hammond contends his sentence for aggravated burglary must be modified to remove any reference to K.S.A. 1991 Supp. 21-4618. The State concurs in Hammond's contentions.

The journal entry of sentencing prepared by the prosecutor is incorrect. The error is to be corrected by the trial court, on remand, entering an order nunc pro tunc to remove reference to K.S.A. 1991 Supp. 21-4618 as to the sentencing for the aggravated burglary conviction.

Affirmed and remanded with instructions.