(137 P.3d 1070)
No. 94,218

STATE OF KANSAS, *Appellee,* v. PETER CRAIG CHAFFEE, *Appellant.*

 Opinion filed July 14, 2006. 

*Michelle Davis,* of Kansas Appellate Defender Office, for appellant.

*Kristafer Ailslieger,* assistant attorney general, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., LARSON, S.J., and WAHL, S.J.

MARQUARDT, J.: Peter Craig Chaffee appeals from his conviction of aggravated kidnapping. We reverse and remand with directions.

Susan Rowe and Peter Chaffee lived together for 2½ to 3 years in Rowe's home in Osage County. Prior to June 2003, there had been several incidents where Chaffee had struck Rowe and threatened her with physical violence.

On or about June 23, 2003, after being sober for approximately 9 months, Chaffee started drinking again. The next day, Rowe went to dinner at the home of her neighbors, the Kittermans. Chaffee arrived at the Kittermans' home later that evening; he was angry at Rowe and demanded money. James Kitterman asked Chaffee to leave.

On June 25, 2003, Chaffee went to a liquor store and bought a case of beer. Later, Chaffee left with Rowe's truck. Rowe called Chaffee on his cell phone and asked him to return the truck or she would call the police. Chaffee returned to Rowe's house, grabbed her by her hair, and threw her on the floor twice. Chaffee then began dragging her around the house while threatening to kill her. Chaffee cracked Rowe's head on the hearth, then dragged her by her hair out the front door and down the porch.

Ultimately, Chaffee dragged Rowe by her hair to the truck. He shoved his knees into her abdomen and then kicked her. Chaffee again threatened to kill her and pushed Rowe into the back of the pickup truck. After Chaffee started driving, Rowe tried to get the tailgate down so she could exit the truck. As she worked on the tailgate, Chaffee slammed on the brakes, throwing her forward in the bed of the truck. This happened at least twice. Chaffee finally

stopped, grabbed Rowe by her hair, and dragged her and a piece of plywood out of the truck.

As a vehicle with headlights approached, Chaffee cursed, got into Rowe's vehicle, and turned toward the oncoming vehicle. The Kittermans were in the approaching vehicle. Chaffee flashed his headlights, and the Kittermans stopped. The Kittermans tried to give Chaffee a lighter that he had left at their house. Chaffee told them he "left something else of his down the road."

The Kittermans came upon Rowe, who was covered in dirt and injured. They took Rowe to their home and called the sheriff. Rowe gave a statement to a member of the sheriff's office, then the officer called for an ambulance.

Another sheriff's officer spoke with Rowe in the hospital emergency room and took photographs of her injuries. Rowe told the officer what had happened. While at the hospital, Rowe underwent an exploratory laparotomy. The surgeon cleaned out blood and intestinal contents from Rowe's abdomen and determined that her intestine had been ruptured in two places. In addition, Rowe's appendix had been torn away from the intestine. The surgeon believed that the injuries were likely caused by some type of blunt force trauma, and Rowe probably would have died had the surgery not been performed. Rowe remained hospitalized for 8 days.

Chaffee was charged with one count of attempted first-degree murder, aggravated kidnapping, domestic battery (second offense), and driving while a habitual violator.

Chaffee testified that he had yelled at Rowe, grabbed her by her hair, and threw her down on the floor. He also admitted dragging her out of the house and kneeing her in the abdomen. He admitted shoving Rowe into the back of the pickup, but he claimed he was driving her to the Kittermans' house. Chaffee testified that the Kittermans got Rowe drunk. Chaffee testified that he saw Rowe trying to climb out of the back of the moving truck and slammed on the brakes to keep her in the truck because he feared she would be injured badly climbing out of the moving truck. He denied intending to kill Rowe.

The jury found Chaffee not guilty of attempted first-degree murder, attempted second-degree murder, and attempted voluntary manslaughter. It convicted Chaffee of aggravated kidnapping.

Chaffee filed a timely motion for a new trial or to arrest judgment, arguing that the State relied solely on attempted murder as the underlying crime for aggravated kidnapping; thus, Chaffee's acquittal of attempted murder invalidated the aggravated kidnapping conviction. Chaffee also took issue with the trial court's response to the jury's question about the underlying crime for aggravated kidnapping. The motion was denied.

Chaffee was sentenced to 96 months' imprisonment. He timely appeals.

### Sufficiency of the Evidence

Chaffee contends that there is insufficient evidence to support his conviction of aggravated kidnapping. Specifically, Chaffee contends that his acquittal of attempted murder means the State failed to prove an element of the aggravated kidnapping charge, *i.e.*, that he took Rowe with the intent to facilitate the crime of murder. Chaffee contends that without the proof of the intent to facilitate murder, the evidence, at most, only supported a conviction of criminal restraint.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

Chaffee relies on *State v. Davis*, 275 Kan. 107, 61 P.3d 701 (2003). In *Davis*, the defendant was charged with a number of crimes, including the premeditated first-degree murder of Davion Johnson and the aggravated kidnapping, aggravated sodomy, and rape of S.K.F. The jury convicted Davis of all the charges except the aggravated sodomy and rape charges. On appeal, the defendant contended that there was insufficient evidence to support the aggravated kidnapping charge, claiming there was no evidence of S.K.F. suffering bodily harm in light of his acquittal on the sex charges.

On appeal, the *Davis* court held that there was clear evidence the defendant took and confined S.K.F. and it was done with the intent to facilitate flight or the commission of a crime. The court

found, however, that the sex charges were the only facts which supported the bodily harm element of aggravated kidnapping. In the absence of bodily harm, the court found the defendant's acquittal of the sex charges "left the jury with no other means of arriving at a guilty verdict for the charge of aggravated kidnapping." 275 Kan. at 120. Finding the presence of bodily harm was the only distinguishing element between aggravated kidnapping and simple kidnapping, the court ordered the conviction reduced to kidnapping. The matter was remanded for resentencing on that charge. 275 Kan. at 119-20.

Chaffee's reliance on *Davis* is somewhat misplaced, as the disputed element in his case was not bodily harm but whether Chaffee acted with the intent to facilitate a crime.

The State contends that a defendant does not need to be convicted of, or even prosecuted for, an underlying offense for the evidence to support a conviction of predicate-offense based crimes. The State cites to *State v. Dixon*, 279 Kan. 563, 571, 112 P.3d 883 (2005), and *State v. Beach*, 275 Kan. 603, 67 P.3d 121 (2003), both felony-murder cases.

In *Dixon*, the defendant was charged with various counts of felony murder, aggravated arson, aggravated battery, and burglary arising from an explosion and fire that destroyed an apartment unit, killing a young woman and her infant son. The jury was unable to reach a verdict on the aggravated arson charge, which was the predicate offense for both the burglary and felony-murder charges. On appeal, the defendant argued the lack of the arson verdict undermined the felony-murder conviction. The court noted that the accused need not be prosecuted for or convicted of the underlying felony in order to be convicted of felony murder. At best, the defendant may only challenge whether there is sufficient evidence to support a felony-murder conviction. 279 Kan. at 571.

In *Beach*, the defendant was charged with various crimes including felony murder for a death allegedly arising from an aggravated robbery. Defendant was convicted of felony murder but acquitted of aggravated robbery and a conspiracy charge. On appeal, she claimed her acquittal of the underlying felony, aggravated robbery, undermined the validity of her felony-murder conviction.

Using a traditional sufficiency of the evidence analysis and disregarding the acquittals, the Kansas Supreme Court noted there was sufficient evidence to support the felony-murder conviction. Consequently, the court had to address "whether this court must accept the jury's finding for purposes of analyzing the felony murder based upon the aggravated robbery." 275 Kan. at 615. The court discussed its prior holdings and those of other courts that consistency among verdicts in criminal cases is not required. The Supreme Court emphasized the United States Supreme Court's decision in the *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984) case, which held that an inconsistent jury verdict based on a conviction of a compound offense and acquittal of the predicate offense gave "no grounds for the defendant to attack the conviction." *Beach*, 275 Kan. at 618 (citing *Powell*, 469 U.S. at 69.) The rationale for this rule was based on the fact the State could not invoke review of the inconsistent verdict, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity by the jury. 275 Kan. at 618.

It should be noted that in *Beach*, the court also indicated that *completion* of the underlying felony was not an essential element of felony murder, and therefore, an acquittal of the underlying felony was not necessarily an inconsistent verdict. 275 Kan. at 615. Felony murder involves an intentional homicide committed "in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436." K.S.A. 21-3401(b); see K.S.A. 2005 Supp. 21-3436.

Neither party in this case, nor the Kansas Supreme Court decisions discussed above mention *State v. Chatmon*, 234 Kan. 197, 671 P.2d 531 (1983), which has relevance to the issue in this case. In *Chatmon*, the defendant was charged with aggravated kidnapping and attempted rape. Chatmon entered the victim's car on a pretense and then forced her to drive to various locations. He struck her several times, fondled her breasts, and said he was going to have sex with her. The victim finally managed to get Chatmon out of her car and had someone call the police. Chatmon ultimately was convicted of aggravated kidnapping and battery, but he was acquitted of attempted rape.

On appeal, Chatmon argued that the trial court lacked jurisdiction to convict him of battery because it was not a charge included in the information and was not a proper lesser included offense of attempted rape. The defendant also argued that in light of his acquittal of attempted rape, there was insufficient evidence to support that he kidnapped the victim with the intent to commit rape. The court rejected the argument, finding that "[t]he jury apparently did not find the appellant committed the requisite overt act" to support the attempted rape conviction and concluded that a defendant "does not always have to be convicted of the crime he intends to facilitate by an abduction to be convicted of kidnapping." 234 Kan. at 206. Therefore, the court concluded that there was sufficient evidence Chatmon had the intent to commit rape when he abducted the victim even though he never completed a sufficient overt act to actually be convicted of attempted rape. 234 Kan. at 206.

All these cases take a somewhat different approach to the question of the effect of a lack of conviction on a predicate offense. However, common themes arise. First, a conviction of a compound offense (here, aggravated kidnapping) is not automatically reversible if there is no conviction on the predicate offense (here, attempted murder). Second, if the jury's verdicts seem inconsistent, that inconsistency alone is not grounds for reversal of a conviction of the compound offense. The bottom line is that the conviction on the compound offense will be reversed only if the court finds there was not sufficient evidence presented at trial to support the verdict, notwithstanding the jury's verdict on the predicate charges.

There is no dispute that there was a forcible taking in this case. Although the jury acquitted Chaffee of attempted first-degree murder and its lesser included offenses, there was sufficient evidence to support a conclusion that Chaffee possessed the requisite intent for a conviction of aggravated kidnapping.

### Aggravated Kidnapping Instruction

On appeal, Chaffee contends that the trial court's instruction setting forth the elements of aggravated kidnapping violated his due process rights and denied him a fair trial. His due process claim

asserts that the instruction failed to identify the crime which he was intending to facilitate. Chaffee also asserts that the error in the instruction was exacerbated by the jury's question about the instruction and the trial court's response.

The trial court's aggravated kidnapping instruction, patterned after PIK Crim. 3d 56.25, stated:

"To establish this charge, each of the following claims must be proved:

1. That the defendant took or confined Susan Rowe by force;

2. That it was done with the intent to hold such person to facilitate the commission of *any* crime;

3. That bodily harm was inflicted upon Susan Rowe; and

4. That this act occurred on or about the 25th day of June, 2003, in Osage County, Kansas." (Emphasis added.)

During deliberations, the jury asked the court whether the aggravated kidnapping instruction which stated the taking was done "to facilitate the commission of *any* crime"; "include[d] counts that he isn't charge[d] with?"

In response, the trial court advised the jury: "You should read and follow the instruction as it is written. No further answer can be given."

No party may challenge the giving or failure to give an instruction on appeal unless the party made a specific objection to the inclusion or omission of the instruction before the jury retires, unless the instruction or the failure to give an instruction is clearly erroneous. K.S.A. 2005 Supp. 22-3414(3); *State v. Adams*, 280 Kan. 494, 508, 124 P.3d 19 (2005). The failure to give an instruction is clearly erroneous only if the reviewing court is firmly convinced that without the alleged error, there was a real possibility the jury would have returned a different verdict. 280 Kan. at 508.

The same standards of review that apply to jury instructions apply to a trial court's responses to jury questions. *State v. Hoge*, 276 Kan. 801, 817, 80 P.3d 52 (2003). When an objection is made to an instruction, the court must consider the instructions as a whole. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error

even if they are in some way erroneous. *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

Chaffee contends, however, that the rule applied to constitutional harmless error applies if his due process rights were affected. Under the constitutional error rule, an error is not harmless unless the appellate court is willing to declare beyond a reasonable doubt the error had little, if any, likelihood of having changed the result of the trial. *State v. Holmes*, 278 Kan. 603, 625, 102 P.3d 406 (2004).

Chaffee relies on *State v. Linn*, 251 Kan. 797, 840 P.2d 1133 (1992), where the defendant was convicted of felony murder, aggravated battery, and aggravated burglary. On appeal, Linn challenged the aggravated burglary instruction; the charging document indicated that he entered the victims' home with the intent to commit a felony or theft therein. The trial court's instruction failed to specify the specific felony that Linn allegedly intended to commit inside the victims' home or the statutory elements of theft or robbery. During deliberations the jury submitted a question asking for " 'a complete description of . . . felony,' " and the court simply told the jury that a felony was a crime punishable for more than 1 year. 251 Kan. at 800.

The Kansas Supreme Court noted that it is the trial judge's responsibility to decide questions of law and to state the applicable law in the jury's instructions. With respect to instructions on aggravated burglary, the court held that the instruction was defective unless it specified and set out the statutory elements of the offense the defendant was accused of intending to commit in making the unauthorized entry. Failure to do so in Linn's case was found to be an error of constitutional magnitude. 251 Kan. at 802. The Kansas Supreme Court has continued to require burglary instructions to specify the predicate crime and give the elements of the same, even if the evidence at trial only supported the possibility of one particular predicate crime. See *State v. Rush*, 255 Kan. 672, 679, 877 P.2d 386 (1994).

More recently, however, the Kansas Supreme Court found such an error in burglary instructions to be harmless. See *State v. Richmond*, 258 Kan. 449, 459, 904 P.2d 974 (1995). In *Richmond*, the

defendant was convicted of aggravated burglary, aggravated robbery, rape, and aggravated kidnapping. On appeal, the defendant contended it was clearly erroneous for the jury instruction on aggravated burglary to fail to specify the underlying felony for the crime. Specifically, the jury instruction stated " '[t]hat the defendant did so with the intent to commit a felony or theft therein.' " 258 Kan. at 458.

The *Richmond* court acknowledged the *Linn* decision but noted that in other cases involving this issue, it had found such an error to be harmless. Additionally, the *Richmond* court recognized that the elements for the underlying felonies of aggravated robbery and rape were listed in other instructions provided to the jury. In *Richmond,* the Supreme Court found that the failure to specifically define the underlying felony under the aggravated burglary instruction constituted harmless error. 258 Kan. at 459.

There are only two published cases which address the use of the "any crime" language in PIK Crim. 3d 56.25. In *State v. Redford,* 242 Kan. 658, 750 P.2d 1013 (1988), the defendant was charged with various crimes, including aggravated kidnapping. The information had charged Redford with taking the victim with the intent to inflict bodily harm or to terrorize the victim. The trial court's instruction included that language but also included the alternative of the taking being done with the intent "to facilitate the commission of a crime." 242 Kan. at 669. Redford's complaint was that the instruction went beyond the charging document by adding the alternative means of facilitation. Citing an earlier decision, the court held that if the evidence supported the alternative means, the instruction did not charge a different crime but only stated a different kind of intent. The court found this error harmless. 242 Kan. at 670-71.

The State relies on *State v. Trotter,* 245 Kan. 657, 783 P.2d 1271 (1989), where the defendant was convicted of aggravated robbery and aggravated kidnapping. On appeal, Trotter challenged the aggravated kidnapping instruction and the trial court's refusal of his request that the element read the taking was done with the intent to hold such person to facilitate "aggravated robbery." The court rejected this argument, citing *Redford's* holding that the instruc-

tions were not reversible error and that the defendant was fully advised of the nature of the charges against him. 245 Kan. at 664-65.

Neither *Redford* nor *Trotter* addressed the question before this court, *i.e.,* whether a failure to tell the jury it was limited to considering the predicate crime charged in the information was error. In these cases, the Kansas Supreme Court recognized that the instructions should follow the charges contained in the information and should not be broader than the information. *Trotter,* 245 Kan. at 664-65; *Redford,* 242 Kan. at 670. In both cases, the defendants were convicted of the predicate crimes, as well as aggravated kidnapping. There was no real question in those two cases that the jury was using some crime, other than the crime indicated in the charging document, to support the kidnapping convictions.

"The charging document is the jurisdictional instrument which gives the court authority to convict a defendant of crimes charged in the complaint or of the lesser included crimes thereof. Conversely, if a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented. [Citation omitted.]" *State v. Horn,* 20 Kan. App. 2d 689, 692, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995).

Although the State is not required to charge a defendant with the predicate crime (*i.e.,* attempted murder) to prove kidnapping with intent to commit murder, it cannot charge him or her with aggravated kidnapping to facilitate murder and then convict him or her for kidnapping to facilitate a crime different from that which is identified in the information.

Here, Chaffee was specifically charged with aggravated kidnapping with the intent to "facilitate the commission of a crime, to-wit: murder in the second degree." However, Chaffee was acquitted of attempted first-degree murder, attempted second-degree murder, and attempted voluntary manslaughter. The jurors in this case clearly indicated in their question to the trial court whether they could consider a crime other than those with which Chaffee had been charged. Likewise, if the jury found the "crime" facilitated by the kidnapping was other than attempted murder, the jury

had not been given instructions setting forth the elements of any other crime to consider.

We cannot find that this error was harmless beyond a reasonable doubt or whether there was a real possibility the jury would have returned a different verdict because we are forced to speculate (1) whether the jury considered crimes beyond those set forth in the charging document; and (2) whether the jury understood, without instructions, what the State was required to prove for any un-charged crime. Under any standard of review, the trial court's instruction, when coupled with the trial court's response to the jury's question, was reversible error.

Reversed and remanded for a new trial on the aggravated kidnapping charge.