**William LOGGINS, Petitioner,**

v.

**Sam CLINE, Warden, Ellsworth Correctional Facility and Paul Morrison, Kansas Attorney General, Respondents.**

**Case No. 07–3113–SAC.**

United States District Court,
D. Kansas.

July 30, 2008.

William Loggins, Ellsworth, KS, pro se.

Jared S. Maag, Kristafer R. Ailslieger, Office of Attorney General, Topeka, KS, for Respondents.

### MEMORANDUM AND ORDER

JULIE A. ROBINSON, District Judge.

This matter is before the Court on petitioner William Loggins' Petition for a Writ of Habeas Corpus (Doc. 1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254. Respondents have filed an Answer and Return (Doc. 9) and petitioner filed a Traverse (Doc. 15). After considering all of the submissions, the petition is denied for the reasons discussed below.

### I. Background

On April 14, 1999 at approximately 10:30 p.m., Earl Nyquist, an 84–year–old hearing and speech impaired man, was watching television at his home in Wichita, Kansas. Two men entered Nyquist's house and approached him from behind. Nyquist was restrained by someone holding a towel around his neck while another person, identified by Nyquist as a black male, searched the residence for items of value. When Nyquist tried to look at the person restraining him, someone hit him in the face and tightened the towel around his neck causing him to almost faint. One of the perpetrators hit Nyquist again while trying to tie him up with a belt. Also, one of the perpetrators used a knife to threaten Nyquist. Nyquist suffered cuts and bruises to his face.

Through written communications Nyquist gave the men the personal identification number (PIN) to his ATM card. Nyquist testified he did so because he was afraid the men would kill him if he did not comply. Before leaving, the men tied Nyquist to his chair with neckties from Nyquist's closet. They took Nyquist's television, billfold, watches, and 1987 gold Oldsmobile car and instructed him not to call for help for an hour after they left. After the men left, Nyquist managed to cut himself free, but was unable to call the police on his TTY because the telephone line had been cut. Nyquist went to a neighbor's house to call the police.

When the investigators arrived, they discovered that the perpetrators had left a note behind and that they had entered by breaking through the back door. Shortly after, police were informed that someone had been using Nyquist's ATM card at multiple convenience stores. While conducting surveillance at one of these stores, police saw a black male leave and get into a brown Chevy Caprice with a passenger. Police followed the Caprice and observed the two men enter a four-plex. They also discovered Nyquist's Oldsmobile in the same area. After unsuccessful attempts to

determine which unit the men entered, the police waited until the men left. They observed Loggins and another black male leave a unit owned by Doris Cox. When approached and asked his name, Loggins gave a false name. An officer noted he had several twenty-dollar bills in his jacket pocket. Cox later testified that Loggins offered to sell Cox a color television that he told her was in a car outside but that she declined the offer because she believed it to be stolen.

The officers searched Nyquist's car and recovered the stolen television and another note that had been used to communicate with Nyquist. A handwriting expert testified that it was highly probable that Loggins was the author of the notes found by the police. Additionally, a clerk from a convenience store identified Loggins as the man who had used Nyquist's ATM card. Finally, Cox identified Loggins in the surveillance tapes of the ATM transactions.

Loggins was charged and convicted of aggravated robbery, aggravated burglary, and aggravated kidnapping and was sentenced to a period of 618 months imprisonment for aggravated kidnapping, a consecutive term of 61 months imprisonment for aggravated robbery, and a consecutive term of 34 months for aggravated burglary. On direct appeal, Loggins' argued that there was insufficient evidence to sustain a conviction of aggravated kidnapping

and aggravating robbery. The Kansas Court of Appeals disagreed and affirmed the conviction.[1] Loggins then filed a motion pursuant to K.S.A. 60–1507. The Sedgwick County District Court denied Loggins' petition. He filed a Supplement to his § 60–1507 Petition, a notice of appeal to the Kansas Court of Appeals, and a motion to amend or vacate the district court's denial of his § 60–1507 motion. The Kansas Court of Appeals remanded the five issues contained in the Supplement to his 60–1507 petition to the district court and later summarily affirmed dismissal of Loggins' K.S.A. 60–1507 petition.[2] Loggins now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

## II. Standard

The Court must construe pro se pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[3] However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[4] The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[5]

Because petitioner "filed his habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this [proceeding]."[6] The AEDPA " 'circumscribes

---

1. *State v. Loggins,* No. 86,831, 55 P.3d 370 (Kan.Ct.App. Oct. 11, 2002) (unpublished opinion), *review denied,* Feb. 4, 2003.

2. *Loggins v. State,* No. 92,795, —— Kan.App.2d ——, 145 P.3d 945, 2006 WL 3257445 (Kan. Ct.App. Nov. 9, 2006) (unpublished opinion), *review denied,* Mar. 27, 2007. A court may summarily affirm when it is clear that the disposition of the case was correct. *See Cox v. Larios,* 542 U.S. 947, 951, 124 S.Ct. 2806, 159 L.Ed.2d 831 (Scalia, J., dissenting); Kan. S.Ct. R. 7.042.

3. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir.2005); *Whitney v. New Mexico,* 113 F.3d 1170, 1173 (10th Cir. 1997).

4. *Whitney,* 113 F.3d at 1173.

5. *E.g., Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

6. *Martinez v. Zavaras,* 330 F.3d 1259, 1262 (10th Cir.2003) (citing *Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)), *cert. denied,* 540 U.S. 973, 124 S.Ct. 446, 157 L.Ed.2d 323 (2003).

a federal habeas court's review of a state-court decision.' "[7] Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent" or if the state court "applies a rule that contradicts the governing law" set forth in Supreme Court cases.[8] A decision is an "unreasonable application" of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."[9] Unreasonable application of facts includes an unreasonable extension of a principle, or an unreasonable refusal to extend a principle to the facts at hand.[10] The courts are to employ an objective standard in determining what is unreasonable.[11]

Although unreasonable determinations of fact are a second basis for a writ, a state court's determination of a factual issue is presumed to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence.[12] "This presumption does not extend to legal determinations or to mixed questions of law and fact."[13] "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.' "[14] "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings."[15]

## III. Analysis

Loggins requests relief on several grounds. First, he asserts there was insufficient evidence to support convictions of aggravated burglary and aggravated kidnapping. Loggins also seeks relief based upon ineffective assistance of trial counsel and appellate counsel. Furthermore, Loggins alleges several issues of prosecutorial misconduct and judicial misconduct. Each of these issues will be discussed in turn.

---

**7.** *Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir.2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)), *cert. denied*, 540 U.S. 916, 124 S.Ct. 305, 157 L.Ed.2d 210 (2003).

**8.** *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**9.** *Id.* at 413, 120 S.Ct. 1495.

**10.** *Id.* at 407, 120 S.Ct. 1495.

**11.** *Id.* at 409, 120 S.Ct. 1495.

**12.** *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir.2003), *cert. denied*, 540 U.S. 973, 124 S.Ct. 446, 157 L.Ed.2d 323 (2003); *Fields*

*v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

**13.** *Martinez*, 330 F.3d at 1262 (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178–79 (10th Cir.2000)).

**14.** *Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir.2003)).

**15.** *Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir.2003) (internal citations omitted), *cert. denied*, 540 U.S. 916, 124 S.Ct. 305, 157 L.Ed.2d 210 (2003).

## A. Insufficient Evidence to Support the Conviction of Aggravated Burglary

The district court dismissed Loggins' sufficiency of the evidence claim for his conviction of aggravated burglary because it was raised for the first time in his § 60–1507 petition.[16] Therefore, this Court can only consider the claim if Loggins can show cause for his default and actual prejudice as a result of the alleged violation of law,[17] or demonstrate that this Court's failure to consider the claim "has probably resulted in the conviction of one who is actually innocent." [18]

■ Loggins asserts that the issue was not raised on direct appeal because of ineffective assistance of counsel. The exhaustion doctrine requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.[19] Loggins raised the issue of ineffective assistance of appellate counsel in his supplement to his § 60–1507 petition, thus the issue was presented to the state court as an independent claim. But attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default.[20] As discussed more fully below, the Court finds no ineffective assistance of counsel in petitioner's case. Therefore, counsel's failure to raise the issue of insufficient evidence to support the conviction of aggravated burglary does not constitute cause for a procedural default. Moreover, Loggins has not

shown prejudice, another required element to overcome the procedural bar.

■ Additionally, Loggins has failed to show that this Court's failure to hear his claim of insufficient evidence to support a conviction of aggravated burglary has probably resulted in the conviction of one who is actually innocent. To establish actual innocence, petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." [21] Furthermore, " 'actual innocence' means factual innocence not mere legal insufficiency." [22] Loggins' Traverse only argues legal insufficiency and does not point to any evidence that he was factually innocent. Therefore, because Loggins has failed to show cause and prejudice or demonstrate actual innocence, the Court is procedurally barred from hearing his claim of insufficient evidence to support a conviction of aggravated burglary.

## B. Insufficient Evidence to Support the Conviction of Aggravated Kidnapping

■ When considering the sufficiency of the evidence in a federal habeas corpus petition, the Court must decide whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [23] Sufficiency of the evidence is a mixed question of law and fact, so the Court must apply both 28

---

16. (R. Case File at 58.)

17. *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

18. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Murray*, 477 U.S. at 496, 106 S.Ct. 2639).

19. *Murray*, 477 U.S. at 488, 106 S.Ct. 2639.

20. *Id.* at 492, 106 S.Ct. 2639.

21. *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604 (internal quotations omitted).

22. *Id.*

23. *Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir.2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

U.S.C. § 2254(d)(1) and (d)(2).[24] Because of the presumption of correctness afforded by 28 U.S.C. § 2254(e), the Court must give deference to any determination of factual issues by the state court.[25]

█ The decision of the Kansas Court of Appeals on direct appeal was not contrary to federal law, nor was it an unreasonable determination of the facts for the Kansas Court of Appeals to find sufficient evidence to support the conviction of Loggins on the charge of aggravated kidnapping. The jury was given the option to find Loggins guilty of aggravated kidnapping, kidnapping, or not guilty. It was further instructed that to find him guilty of aggravated kidnapping under Kansas law the following elements must be proved: (1) Loggins took or confined Nyquist by force or threat; (2) that it was done with the intent to hold Nyquist (a) to facilitate flight, or (b) to inflict bodily injury or to terrorize the victim; and (3) that bodily harm was inflicted upon Nyquist.[26] The contested issue before the Court of Appeals was whether the conviction could be supported despite the fact that Nyquist was never moved. The Court of Appeals relied on *State v. Richmond*[27] and *State v. Buggs*[28] to decide that physically moving the victim was not required under Kansas law because the statute defined kidnapping as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person to facilitate flight or the commission of any crime." [29] The court also compared the

facts of this case to *State v. Hammond.*[30] In *Hammond,* the victims were in bed when the intruders entered their house.[31] The victims were taped to their bed and remained there for the entirety of the robbery.[32] The Kansas Supreme Court held that binding the victims to make the commission of the crime easier constituted aggravated kidnapping.[33] Likewise, the perpetrators here tied up Nyquist to make the robbery easier to commit because Nyquist was unable to interfere. The Court's application of the controlling state law was not contrary to federal law as set forth by the Supreme Court because any rational trier of fact could have found that Nyquist was confined by threat or force to facilitate flight or the commission of the robbery, and thus actually moving the victim was not an essential element of the crime.

Furthermore, Loggins has modified his argument in his federal habeas petition and now claims that the evidence shows Nyquist was struck before the kidnapping and not as he was being kidnapped or after he was kidnapped. This claim is not supported by the evidence at trial. Nyquist testified that he was hit while attempting to look back when he was forced to sit in his chair and restrained by the towel around his neck. He also testified that one of the perpetrators hit him while trying to tie him up with a belt. This evidence is sufficient for any rational trier of fact to have found the essential elements of aggravated kidnapping beyond a

24. *Id.* (citing *Maynard v. Boone,* 468 F.3d 665, 673 (10th Cir.2006)).

25. *Id.* Additionally, the Court is cognizant that a state court's interpretation of a state statute "is a matter of state law binding on this court." *Parker v. Scott,* 394 F.3d 1302, 1319 (10th Cir.2005).

26. *See* K.S.A. §§ 21–3420, 21–3421.

27. 258 Kan. 449, 904 P.2d 974 (1995).

28. 219 Kan. 203, 547 P.2d 720 (1976).

29. *See* K.S.A. § 21–3420(b).

30. 251 Kan. 501, 837 P.2d 816 (1992).

31. *Id.* at 820.

32. *Id.*

33. *Id.*

reasonable doubt. Therefore, the Kansas Court of Appeals' decision was not contrary to federal law or an unreasonable determination of the facts in light of the evidence presented at trial.

## C. Ineffective Assistance of Counsel

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [34] A determination of ineffectiveness of counsel must be examined under a two-prong test. First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." [35] There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy. [36] Furthermore, counsel's performance must be considered from counsel's perspective at the time of the alleged error and in light of all the circumstances. [37] Second, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [38] Additionally, this Court may only grant habeas relief under 28 U.S.C. § 2254(d)(1) if the state court's determination on the issue involved an unreasonable application of this test. [39]

Loggins alleges five claims of ineffective assistance of counsel. Because the Sedgwick County District Court decided the issues Loggins submits in his federal habeas corpus petition and the Kansas Court of Appeals affirmed the district court's decision, this Court may only grant relief if the state court's application of Supreme Court precedent was unreasonable. The Court concludes the state court's resolutions of Loggins' claims of ineffective assistance of counsel were not an unreasonable application of *Strickland v. Washington*.

### 1. Failure to Appeal Aggravated Burglary Conviction

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." [40] An appeal "that raises every colorable issue runs the risk of burying good arguments." [41] Because an advocate has a duty to support the client to the best of his ability, it may be necessary for counsel to raise only the strongest claims. [42]

The state court determined that Loggins' appellate counsel was not required to raise issues that are weak or without merit and that Loggins did not overcome the presumption of reasonable assistance of counsel. Thus, Loggins did not meet the first prong of the *Strickland* standard.

**34.** *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**35.** *Id.* at 694, 104 S.Ct. 2052.

**36.** *Id.* at 689, 104 S.Ct. 2052.

**37.** *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

**38.** *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

**39.** The Court notes that the state standard for determining ineffectiveness of counsel applied by the state parallels the federal standard as stated in *Strickland.* See *Baker v. State,* 243 Kan. 1, 755 P.2d 493 (1988); *Chamberlain v. State,* 236 Kan. 650, 694 P.2d 468 (1985).

**40.** *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

**41.** *Id.* at 753, 103 S.Ct. 3308.

**42.** *Id.* at 754, 103 S.Ct. 3308.

This Court agrees and concludes the district court's decision was not an unreasonable application of *Strickland*.

### 2. Failure to Appeal All Viable Issues Requested by Petitioner on Appeal

Likewise, Loggins' claim of ineffective assistance of counsel for failure to appeal all viable issues fails. As stated above, counsel is not required to raise issues which are weak or without merit because raising such issues may dilute the stronger issues.[43] The state court's determination that appellate counsel's failure to raise all issues on appeal does not constitute ineffective assistance of counsel regardless of whether petitioner requested counsel to raise the issues. Loggins has neither shown that counsel's performance was below an objective standard of reasonableness nor that the result of the proceeding would have been different but for counsel's actions. Thus, the Court concludes the state court's determination is not an unreasonable application of *Strickland*.

### 3. Failure to Effectively Cross-examine State's Witnesses

The state court determined after detailed review of the trial transcript that Loggins failed to show that trial counsel's performance was deficient or that there was a reasonable probability the outcome of the trial would have been different but for counsel's failure to ask about the lack of fingerprint evidence. The state court correctly noted that the prosecution had covered this topic; therefore, the lack of fingerprint evidence was submitted to the jury. Although Loggins claims that the emphasis of the evidence was lost because trial counsel failed to assert these issues through the "crucible of cross-examination," the state court's determination that this did not rise to the level of ineffective counsel was not unreasonable.

Furthermore, the state court determined that the testimony of Gale Treat was consistent with lab reports dealing with handwriting comparisons and that those issues were thoroughly examined by expert witness Dennis McPhail. Therefore, Loggins has neither overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy, nor that but for counsel's alleged errors the result of the trial would have been different. For these reasons, the Court concludes that the state court's determinations are not an unreasonable application of *Strickland*.

### 4. Failure to Call Alibi Witness

Loggins asserts that trial counsel's failure to call Kevin Hadley, an alibi witness, constitutes ineffective assistance of counsel. Defense counsel called two other alibi witnesses and had located Mr. Hadley with ample time to interview him and listed him as a potential witness yet did not call him to testify at trial. The state court found that counsel made a strategic decision not to call Mr. Hadley as a witness in the jury trial proceedings. Based on this determination, the state court found that counsel's decision was within the wide range of reasonable professional assistance that might be considered sound trial strategy. The Court agrees and does not find this application of *Strickland* unreasonable.[44]

---

**43.** *Id.* at 752, 103 S.Ct. 3308 ("Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of·assigned errors increases. Multiplicity hints at lack of confidence in any one.").

**44.** *See Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir.1998) (denying relief under *Strickland* because "[g]enerally, the decision whether to call a witness rests within the sound discretion of trial counsel."); *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir.1986) (denying relief under *Strickland* because "[w]hether to call a particular witness

### 5. Failure to Properly Object to Prosecutorial Misconduct During Preliminary Hearing and Trial

As discussed more fully below, this Court does not disturb the state court's determination that writing the word "guilty" on the chalkboard during closing arguments does not constitute prosecutorial misconduct. Therefore, the state court's determination that there cannot be ineffective assistance of counsel for failure to object to something well within the bounds of the legal process is not an unreasonable application of *Strickland*.[45] Moreover, writing "guilty" on the chalkboard is the only issue Loggins raises in his argument for failure to object to prosecutorial misconduct, although he styled the issue as involving misconduct at the preliminary hearing as well. The court declines to provide additional factual allegations to construct an argument on Loggins' behalf.[46]

### D. *Prosecutorial Misconduct*

Loggins primarily argues that the state court's interpretation of the state statute governing the use of interpreters was incorrect and that the prosecutor writing "guilty" on the chalkboard during closing arguments was grounds for prosecutorial misconduct. These are determinations of state law. It is well established that "federal habeas corpus relief does not lie for errors of state law."[47] However, because the Court construes pro se petitions liberally and Loggins does assert that the use of the victim's daughter as an interpreter violated his right to due process, and because the two issues of prosecutorial misconduct are not clearly separated in Loggins' Traverse, the Court will proceed as though Loggins has sufficiently alleged a claim of violation of his right to due process on both issues.

The Due Process Clause of the Fourteenth Amendment[48] "imposes minimum standards of fairness on the states, and requires state criminal trials to provide defendants with protections 'implicit in the concept of ordered liberty.' "[49]

### 1. Writing "Guilty" on the Chalkboard

In a review for due process violation "it is not enough that the prosecutor's comments were undesirable or even universally condemned."[50] The relevant question is whether the prosecutor's actions " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "[51]

is a tactical decision, and, thus, a matter of discretion for trial counsel.").

**45.** *See Snow v. Sirmons*, 474 F.3d 693, 724 (10th Cir.2007) (holding that failure to object to admissible evidence was not ineffective assistance of counsel); *Parker v. Scott*, 394 F.3d 1302, 1321 (10th cir.2005) (holding counsel was not deficient in not objecting to testimony that was permissible within state rules of evidence).

**46.** Moreover, the Court finds no error in the state's court determination that there were no issues of prosecutorial misconduct as set forth in the next section. Thus, counsel's failure to object cannot rise to the level of ineffective assistance of counsel.

**47.** *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (further citations omitted)).

**48.** U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law").

**49.** *Danforth v. Minnesota*, —— U.S. ——, 128 S.Ct. 1029, 1035, 169 L.Ed.2d 859 (2008) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).

**50.** *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

**51.** *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

Here, Loggins argues that the act of writing "guilty" on the chalkboard during closing arguments represents a statement by the prosecutor that informed the jury of the prosecutor's personal opinion. After viewing the prosecutor's actions in context with her words, the state court determined that the presentation did not fall outside the scope of the considerable latitude afforded a prosecutor in closing argument because the act related to a discussion of the evidence. After reviewing the trial transcript, the Court finds the state court's analysis accurate; therefore, the prosecutor's actions could not have infected the trial with unfairness and the resulting conviction was not a denial of due process. Thus, the Court determines that the state court's decision was not contrary to federal law, as set forth by the Supreme Court.

### 2. Use of Victim's Daughter as an Interpreter

At Loggins' preliminary hearing, the State's certified interpreter was unable to be present. A security guard for the courthouse, Howard Rose, who was able to interpret for the hearing-impaired and deaf, was duly sworn by the court reporter with the interpreter's oath. The preliminary hearing started with Rose interpreting, but Carolyn Cox, the victim's daughter, believed she could assist in making things go faster because she could communicate with her father better. Her father used a lot of finger spelling which was sometimes difficult to follow. Cox was duly sworn by the court reporter with the interpreter's oath and facilitated the interpreting for the remainder of the preliminary hearing. Rose remained in the courtroom to observe and indicated to the court that he agreed that an exact recitation of what the victim was conveying through sign language was interpreted by Cox in the courtroom. There was also a monitor used so Nyquist could view the questions being asked of him.

Loggins primarily relies on a state statute for his argument that the use of Cox at the preliminary hearing as an interpreter was inappropriate and prejudicial.[52] There is no evidence or accusation that the translation was inaccurate and another sworn interpreter confirmed the accuracy of Cox's translation. Moreover, the state court accurately noted that Loggins, not the State, as Loggins asserts in his Traverse, had part of the preliminary hearing read into the record at his trial to impeach the testimony of Nyquist. Importantly, the only federal law cited by either Loggins or defendants was established by the federal district courts and circuit courts, not by the Supreme Court.[53] Likewise, this Court cannot identify any Supreme Court precedent on this issue. Thus, the Court cannot find the state court's determination resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.[54]

---

**52.** *See* K.S.A. §§ 75–4352–4353.

**53.** The Court notes that Loggins' claim fails even under this precedent. *See Lujan v. United States,* 209 F.2d 190, 192 (10th Cir.1953) (stating "the trial court is necessarily accorded a wide discretion in determining the fitness of the person called, and the exercise of that discretion will not be disturbed on review in the absence of some evidence from which prejudice can be inferred"). Loggins has not shown any evidence from which prejudice can be inferred as there was another impartial sworn interpreter checking for accuracy and Loggins used the testimony to his benefit during trial.

**54.** *See Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006) (holding state court could not have unreasonably applied clearly established federal law given the lack of holdings from the Supreme Court regarding the potentially prejudicial effect of spectators' courtroom conduct).

### E. Judicial Misconduct

Loggins also alleges the following issues of judicial misconduct by the trial judge: (1) failing to obtain a certified interpreter and using two uncertified interpreters, including Nyquist's daughter; (2) allowing the State to amend the charges against petitioner to include aggravated kidnapping without another preliminary hearing; (3) failing to instruct on lesser included offenses; and (4) allowing an expert witness to testify as to his personal opinion. In a habeas appeal, the Court does not evaluate whether it would reverse a conviction after a trial in which a federal judge behaved in the manner alleged here; instead, the Court "ask[s] whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." [55]

### 1. Use of Uncertified Interpreters

As already discussed, there is no Supreme Court precedent, contrary or otherwise, relating to the state court's decision, and the rules governing the use of interpreters are a matter of state law. Therefore, there can be no judicial misconduct and Loggins' claim for federal habeas corpus relief fails as to this issue.

### 2. Allowing State to Amend Charges Without Additional Preliminary Hearing

The State made an oral motion to amend the complaint to include the charge of aggravated kidnapping at the end of the preliminary hearing. Defense counsel argued against the motion, but the State's request was granted and the charge was added. This preliminary hearing took place more than eight months before trial and the added charge relied on the same evidence as the other charges.

Loggins alleges he was prejudiced by the trial judge's decision to allow the amended charge. But a judicial hearing is not a prerequisite to prosecution by information,[56] thus, there is no federal constitutional right to a preliminary hearing. Finally, Loggins' trial was not unfair or a violation of his due process rights because he had notice of the charges and evidence brought against him several months before trial. Therefore, there was no judicial misconduct and the Court finds Loggins' claim does not present grounds for federal habeas corpus relief.

### 3. Expert Witness

Loggins asserts that his Fourteenth Amendment right to a fair trial was violated when the trial judge allowed an expert witness to give a personal opinion concerning Loggins' guilt or innocence. This conclusion is based upon a statement that Loggins alleges was made by expert handwriting analyst Dennis McPhail that "if he had more samples he could prove that petitioner was the auther [sic] of the notes in question." This Court can find no such statement in the record. McPhail did state that the initial samples that were sent to him were not enough to state a conclusive finding of whether Loggins was the author, although he had found some similarities. Thus, McPhail requested and received more samples. Upon comparing the additional writing samples, he concluded that it was highly probable that Loggins was the author of the notes. It is clear that McPhail's ultimate determination was based upon all of the samples. Moreover, witness credibility is an issue of fact for the jury and the Court gives deference to the jury's determination.

The trial judge's decision to allow McPhail to testify as an expert witness and

---

**55.** *Duckett v. Godinez,* 67 F.3d 734, 740 (9th Cir.1995).

**56.** *See Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

the subsequent decision to affirm were matters of state law, thus under the AED-PA the Court can only grant relief if the state court's decision was contrary to federal law as determined by the Supreme Court or an unreasonable determination of the facts. The Court finds that McPhail's testimony did not violate Loggins' right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment nor was it contrary to established federal law or an unreasonable determination of the facts in light of the evidence. There is nothing about McPhail's testimony that renders the trial fundamentally unfair or infects the whole trial with unfairness so as to deny Loggins a fair trial. Therefore, the Court concludes that there was no judicial misconduct and Loggins is not entitled to relief on these grounds.

### 4. Failure to Instruct on Lesser Included Offenses

The controlling Supreme Court precedent regarding instructions of lesser included offenses is *Beck v. Alabama.*[57] However, in *Beck*, the Supreme Court refused to determine whether there is a constitutional right to lesser included offenses in non-capital cases.[58] The Supreme Court has yet to rule on this issue and the Tenth Circuit has "establish[ed] a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction."[59]

Loggins does not allege any violation of federal law, as he only cites to Kansas state cases and mentions no constitutional violations. As noted before, this Court does not stand to correct errors of state law. Additionally, there is no federal law as set forth by the Supreme Court that is contrary to the state court's decision. Therefore, the Court follows the established rule of "automatic non-reviewability" and has no reason to grant habeas relief on these grounds.

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition for a Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 is DENIED.

**IT IS SO ORDERED.**

---

**57.** 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

**58.** *Id.* at 638 n. 14, 100 S.Ct. 2382.

**59.** *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir.2004) (citing *Chavez v. Kerby,* 848 F.2d 1101, 1103 (10th Cir.1988)).