NOT DESIGNATED FOR PUBLICATION

No. 112,559

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE DEAN WAID,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed March 11, 2016. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew Hamline*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MCANANY and ARNOLD-BURGER, JJ.

*Per Curiam*:  Jesse Dean Waid appeals his conviction of aggravated escape from custody and his resulting sentence. Waid contends:  (1) The State failed to present sufficient evidence that he had been granted temporary leave "pursuant to express authorization of law or order of a court," and the jury was not instructed of all of the essential elements of the charged crime; (2) conflicting jury instructions regarding the required mental state diluted the State's burden to prove that Waid committed the crime intentionally; and (3) the district court improperly classified two prior Missouri convictions as person felonies for criminal history purposes.

1

Waid was ordered by the district court to reside at the Johnson County Residential Center for 12 months after he was found to have violated the terms of his probation. The court placed him in the custody of community corrections and authorized community corrections to add conditions of probation as it saw fit. Waid entered the residential center in April 2013.

Upon his arrival at the residential center, Waid reviewed with his case manager the residential center's rules that Waid would be required to follow. Waid signed an agreement disclosing the residential center's policies and the potential penalties for noncompliance. The rules specifically addressed the terms under which a resident could be charged with aggravated escape from custody:

> "9. Clients are to be at their designated place of assignment. Clients are to keep themselves available for periodic phone and field checks by staff and, while away from the facility, must check in as directed. Clients who fail to return to the Center or are not at their place of assignment may be guilty of escape or aggravated escape under the Kansas Statutes.
>
> "10. Clients shall not leave the housing unit without prior staff approval.
>
>> "a. Clients are required to sign in and out of their assigned building and shall notify the on-duty staff when going to another assigned area.
>>
>> "b. If leaving the facility, clients must sign out one hour prior to their departure time. When the client arrives back to his/her housing unit he/she must immediately sign back in on his/her sign in/out sheet."

Under the terms of Waid's agreement with the residential center, he was required to participate in the work-release program. He was informed about the transportation rules to and from his employment and he was aware that he had to arrange for transportation based on a planned schedule. Waid also signed a Residential Center Work

2

Agreement, which outlined the rules of transportation and the rules relating to his time on the job. Under those rules, Waid was required to return to the residential center immediately upon the completion of his job duties. He was required to call the residential center if he had a problem meeting the scheduled transportation arrangements or if he had a health issue requiring attention. He was not authorized to leave the State of Kansas.

Waid began working for Epic Landscaping as part of the work-release program. He regularly signed in and out of the residential center to attend his work-release job at Epic. A couple of weeks later, Waid signed out of the residential center and went to work at Epic but failed to return to the center by 10 p.m. that night. He did not contact the center regarding any problem that prevented him from returning as required. Another resident of the center also failed to return that same night. After contacting the employer and police dispatch about Waid's absence, a warrant was issued for Waid's arrest.

Four days later, Waid called the residential center and asked the staff to pick him up at Research Medical Center in Kansas City, Missouri. His explanation for his absences was that after he and another resident of the center received their paychecks from Epic, they decided to check into a hotel rather than return to the center.

Waid was charged and convicted of aggravated escape from custody in violation of K.S.A. 2015 Supp. 21-5911. The district court sentenced Waid to the mitigated term of 18 months in prison. Waid appeals.

*Sufficiency of the Evidence*

For his first claim of error, Waid contends the evidence supporting his conviction was insufficient because the State failed to prove that his leave from the residential facility was "pursuant to express authorization of law or order of a court."

3

To address this claim, we review the evidence in the light favoring the prosecution. We will uphold the conviction if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Longoria*, 301 Kan. 489, Syl. ¶ 30, 343 P.3d 1128 (2015).

K.S.A. 2015 Supp. 21-5911(b)(1)(A) defines aggravated escape from custody as "[e]scaping while in custody . . . [u]pon a charge, conviction of or arrest for a felony." K.S.A. 2015 Supp. 21-5911(d)(2) defines "escape" as a "departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court."

Based on K.S.A. 2015 Supp. 21-5911 and PIK Crim. 4th 59.080, the district court instructed the jury that the State was required to prove:

> "1. The defendant was being held in custody on a conviction of a felony.
> "2. *The defendant failed to return to custody following temporary leave lawfully granted.*
> "3. The defendant did so intentionally, knowingly or recklessly.
> "4. This act occurred on or about the 8th day of June, 2013 in Johnson County, Kansas.
> "For purposes of the crime of aggravated escape from custody, a person is in 'custody' when he is lawfully placed in a residential facility." (Emphasis added.)

Though the jury was instructed that Waid failed to return to custody following temporary leave lawfully granted, Waid complains that the statute requires that the State prove that the leave was lawfully granted "pursuant to express authorization of law or order of a court." He claims that the State failed to produce evidence that Waid was lawfully granted leave under either a court order or express authorization of law.

According to Waid, there are situations where an individual might leave custody pursuant to a court order, such as allowing a person temporary leave to attend a family funeral. That is not what happened here. But Waid recognizes that an escape also could

4

be predicated on not returning to the center after being granted a temporary leave "pursuant to express authorization of law," such as under a work-release program for persons in the custody of the Kansas Department of Corrections. See K.S.A. 75-5267 (providing express authorization for work release programs and release from confinement for persons in the custody of the Department of Corrections).

But Waid claims that the Johnson County Residential Center is not a Department of Corrections facility; rather, it is a county corrections program. Waid claims that county corrections programs may receive funding through the Department of Corrections, but that does not mean that persons held in the Johnson County Residential Center are subject to other provisions of law governing the Department of Corrections. Therefore, Waid claims the State failed to provide evidence that the leave was lawfully granted "pursuant to express authorization of law."

Contrary to this argument is our Supreme Court's holding in *State v. Garrett*, 235 Kan. 768, 684 P.2d 413 (1984). There, the defendant was convicted of aggravated escape from custody when he failed to return to a county community corrections center at his scheduled time. Garrett checked out of the facility on a job-seeking furlough, but he spent the day visiting family in another county and returned to the center nearly 10 hours after his scheduled return time. The State charged Garrett with aggravated escape from custody. The district court found that K.S.A. 21-3810(a) (the prior statute providing for the offense of aggravated escape from custody) was unconstitutional as applied to Garrett in a community corrections setting. On review, our Supreme Court reversed, concluding that the charge of aggravated escape from custody "is applicable to a convicted felon who, without permission and in violation of the rules, departs from a community corrections facility or fails to return following temporary leave lawfully granted." 235 Kan. at 775. The Supreme Court specifically found that a community corrections facility is part of the overall correctional program even though some control is maintained by the county:

5

"The Kansas Community Corrections Act is contained at K.S.A. 1983 Supp. 75-5290 *et seq*. It is clear from a reading of the various sections of that act that the community corrections program is a part of the overall state correctional program. The secretary of corrections is authorized to make grants of state money to counties for the development and operation of community correctional services (75-5291). The corrections advisory board of a particular county is required to develop and implement a comprehensive plan which must be submitted for approval, not only to the board of county commissioners, but also to the secretary of corrections (75-5292[*d*] & [*e*]). The community corrections act is to be administered by the secretary of corrections or by employees of the department of corrections (75-5294). . . . It is clear from all of these provisions that a community corrections residential center is a detention facility for holding persons convicted of crimes and also for holding persons detained pursuant to a court order or imposed as a specified condition of probation or parole." 235 Kan. at 774-75.

Waid concedes that the State presented evidence showing that the temporary leave granted was pursuant to a series of agreements between him and the residential center. These consisted of the residential center agreement, a work-release agreement, and a sign-in/out sheet. But Waid contends that none of these agreements meet the criteria of "express authorization of law."

Waid was placed into the work-release program by court order directing him to complete the program and abide by "all rules and regulations of the assigned programs" as part of the terms of his probation. In the agreement, Waid agreed to a residential center plan which contained the following admonition:

"ANY CLIENT RELEASED TO THE CUSTODY OF JOHNSON COUNTY RESIDENTIAL CENTER WHO WILLFULLY FAILS TO RETURN TO THE DESIGNATED PLACE OF ASSIGNMENT AT THE TIME SPECIFIED, MAY BE GUILTY OF ESCAPE OR AGGRAVATED ESCAPE FROM CUSTODY, AND UPON

6

CONVICTION, BE SUBJECT TO THE PENALTY PROVIDED IN THE KANSAS STATUTES ANNOTATED."

Waid argues that he cannot be bound by an agreement, as an agreement is not a court order. But the court order provided that he abide by all rules and regulations of the residential center; therefore, the court order encompassed the rules and regulations laid out in the agreements. As part of the community corrections program, Waid was required to seek and maintain full-time employment. Leave to participate in community corrections programs was expressly authorized by law because Waid was ordered to comply with the requirements of the program. A separate order pertaining to the details of Waid's work release was not necessary.

When viewed in the light most favorable to the State, a rational factfinder could fairly conclude that Waid committed the crime of aggravated escape from custody when he left the residential center for lawfully granted work release and intentionally failed to return to the facility at the designated time.

*Jury Instruction: Failure to Instruct on "Pursuant to Express Authorization of Law or Order of a Court."*

As an alternative to the foregoing argument, Waid contends it was constitutional error not to instruct the jury that the leave must be "pursuant to express authorization of law or order of a court." But Waid specifically requested the instruction he now criticizes. A party may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). When a defendant's requested instruction is given to the jury, the defendant cannot later claim on appeal that it was error to give it. See *State v. Jones*, 295 Kan. 804, 811-12, 286 P.3d 562 (2012).

7

But Waid contends that "pursuant to express authorization of law or order of a court" is an element of the crime, and he contends the failure to include this in the jury instruction was structural error of constitutional magnitude because the jury was not instructed on this element.

The PIK instruction recommends instructing the jury that "the defendant failed to return to custody following temporary leave lawfully granted or ordered by a court." PIK Crim. 4th 59.080. It does not contain the language of the statute indicating that the leave must be lawfully granted "pursuant to express authorization." Our Supreme Court has stated: "We strongly recommend the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions. See *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009)." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015).

Finding that the defendant failed to return after temporary leave lawfully granted is not a separate and distinct element from "pursuant to express authorization or order of a court." Rather, the clause clarifies the phrase "lawfully granted."

Waid suggests that the jury could have found that the permission for leave was granted by the residential center and not by law. He asserts that a reasonable juror might have found that Waid's departure was not "pursuant to express authorization of law" and did not constitute escape. But the residential center had the authority to establish rules and procedures by which Waid must abide in order to comply with the terms of his order of probation. The order of probation granted authority to the residential center to establish the rules and procedures governing Waid's lawful departure from the residential center. A court order is not required for every temporary departure from the center. We find no reversible error in the giving of this instruction. But even if the instruction was inadequate, given the overwhelming evidence that confronted Waid at trial, we are

8

convinced beyond a reasonable doubt that instructing the jury in the fashion Waid now desires would have had no effect on the outcome of the case.

*Jury Instruction: Defendant's Mental State*

Waid also contends the court erred in describing for the jury the mental state needed for a conviction of aggravated escape from custody.

Jury Instruction No. 9, which was requested by the State, properly instructed the jury that it must prove that Waid committed the crime intentionally. But Jury Instruction No. 11, the elements instruction, instructed the jury that it must find that Waid acted "intentionally, knowingly, or recklessly." Defense counsel did not object to the contradictory jury instructions. In fact, he proposed the very instruction he now criticizes. Thus, the rule of invited error discussed above applies here as well.

But Waid asserts that the dilution of the burden of proof constituted structural error. Invited error does not apply when the error is structural because structural errors are so intrinsically harmful that automatic reversal is required. *Verser*, 299 Kan. at 784. But structural errors constitute a very limited class of errors that affect the framework within which the trial proceeds. *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010); see *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

K.S.A. 2015 Supp. 21-5911 does not set forth a required mental state for the charge of aggravated escape from custody. But the pattern instruction recommended by the PIK committee for this offense includes an element requiring the State prove that the accused acted "intentionally, knowingly, or recklessly." PIK Crim. 4th 59.080; see PIK Crim. 4th 52.300 ("When the statute does not contain a culpable mental state under the

9

code, PIK recommends the charging instruction state that the State must prove that the defendant acted "intentionally, knowingly, or recklessly.").

In its complaint, the State charged Waid with "knowingly . . . and willfully" committing aggravated escape from custody. Because the State charged intentional and knowing conduct, it had to prove that Waid acted intentionally and knowingly. See *State v. Chaffee*, 36 Kan. App. 2d 132, 142, 137 P.3d 1070 (2006). Thus, a jury instruction that directs that Waid could be found guilty if the jury found he acted "recklessly" was error and diluted the State's burden of proof.

But we are satisfied beyond a reasonable doubt that giving this erroneous instruction did not affect the outcome of the trial. *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Instruction No. 9 specifically instructed the jury: "The State must prove that the defendant committed the crime intentionally." The evidence presented at trial supported only the conclusion that Waid acted intentionally, not recklessly. He checked out of the residential center for a work-release assignment at Epic Landscaping. He received his paycheck at the end of the day and intentionally did not return to the residential facility at his designated time. Rather than returning to the facility, he chose to leave with another resident and check into a hotel. There is no contrary evidence in the record. There is nothing to suggest that Waid acted recklessly rather than intentionally. In its closing argument, the State argued that Waid acted intentionally, not recklessly:

> "The Defendant did so intentionally. You heard the testimony. He told two of
> the—actually residential case managers, Stacey Troutman, as well as CA Hawthorne, he
> got paid that Friday, just decided he wasn't coming back; he wasn't returning to the
> Residential Center. That's intentional. He intentionally committed this crime.
> "And Jury Instruction 9 tells you that the State must prove the Defendant acted
> intentionally, that he acted intentionally when it's his desire or conscious objective to do
> the act complained of by the State. The act being not returning after a lawful out of center

placement. That's what he did intentionally. That's the act that the State is complaining about. That's the—this is the basis of this charge.

"There isn't any accident that he didn't return. He didn't return recklessly. He stayed in a hotel."

Later, the State reiterated that Waid "intentionally and willfully decided he wasn't going to come back. He wasn't going to come back at the time assigned, the time required, and that's what we're talking about here."

Waid did not present any evidence or theory of defense that his state of mind was at issue. His only defense was that his weekend departure from the facility did not constitute escape because he eventually called and asked to return to the center. The error in Jury Instruction No. 11 was harmless.

*Sentencing: Classification of Prior Missouri Convictions*

Waid argues that in classifying his 2008 and 2013 Missouri convictions for resisting arrest as person felonies for criminal history purposes, the district court erroneously made factual determinations about these Missouri convictions in violation of his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution as articulated in *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). We are unpersuaded by Waid's argument.

This issue involves the interpretation of the Kansas Sentencing Guidelines Act (KSGA), which is a legal question over which our review is unlimited. *State v. Keel*, 302 Kan. 560, Syl. ¶ 4, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). Whether to classify a prior crime as a person or nonperson crime is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed. 302 Kan. 560, Syl. ¶¶ 8-9.

11

Waid's extensive criminal history includes two Missouri convictions for "Resist Arrest by Fleeing/Risking Death or Injury." Waid objected to classifying these two crimes as person felonies. The district court overruled Waid's objection and sentenced him to the mitigated term of 18 months in prison. On appeal, Waid argues the district court erred in classifying these two convictions as person felonies.

In order to classify an out-of-state offense as a person or nonperson felony, K.S.A. 2015 Supp. 21-6811(e)(3) requires the sentencing court to determine what constitutes a comparable Kansas offense.

Waid's prior Missouri convictions for resisting or interfering with arrest were controlled by Mo. Rev. Stat. § 575.150 (2000 & 2013 Supp.), which required the State to prove (1) the defendant knew that a law enforcement officer was making an arrest or a stop of a person or vehicle, (2) the defendant resisted the arrest or stop by using or threatening to use violence or physical force or by fleeing from the officer, and (3) the defendant did so with the purpose of preventing the officer from completing the arrest or stop. The statute also provides: "Resisting an arrest, detention, or stop by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony." Mo. Rev. Stat. § 575.150.

The sentencing court determined that the Kansas offense comparable to Waid's Missouri convictions is fleeing and eluding under K.S.A. 2015 Supp. 8-1568(b). This Kansas statute in effect at the time Waid committed his current crime provided:

> "(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who: (1) Commits any of the following during a police pursuit: (A) Fails to stop for a police road block; (B) drives around tire deflating devices placed by a police officer; (C) engages in reckless driving as defined by K.S.A. 8-1566, and amendments

12

thereto; (D) is involved in any motor vehicle accident or intentionally causes damage to property; or (E) commits five or more moving violations." K.S.A. 2015 Supp. 8-1568(b).

Reckless driving as used in this statute is defined in K.S.A. 8-1566 as driving "any vehicle in willful or wanton disregard for the safety of persons or property." Felony fleeing and eluding is a person felony. See K.S.A. 2015 Supp. 8-1568(c)(2).

The comparison of crimes to determine whether a prior crime should be treated as a person felony is made using either the categorical approach or the modified categorical approach. As stated in *State v. Dickey*, 301 Kan. 1018, 1038-39, 350 P.3d 1054 (2015), *writ for cert. filed* September 17, 2015:

> "The categorical approach and modified categorical approach described in *Descamps* ensure that sentencing courts, when examining a prior conviction for sentencing purposes, do not engage in factfinding in violation of *Apprendi* by attempting to determine whether a defendant's actions satisfied an element not contained within the statute under which the defendant's prior conviction arose. See *Descamps*, 133 S. Ct. at 2281-87. Though *Descamps* involved determining whether a prior conviction qualified as a predicate offense under the [Armed Career Criminal Act], the methods *Descamps* outlined for making this determination in a constitutionally valid manner necessarily apply to determining whether a prior burglary conviction should be classified as a person or nonperson felony under the KSGA."

The categorical approach is appropriate "when the statute forming the basis of the defendant's prior convictions contains a single set of elements constituting the crime." 301 Kan. at 1037. In that situation, the court determines whether a prior conviction may be used for sentencing purposes by comparing the elements of the two crimes. If the elements of the prior crime are the same as or more narrow than the later offense, the prior crime may be used for sentencing purposes. 301 Kan. at 1037.

13

The second approach, the modified categorical approach, "applies when the statute forming the basis of the prior conviction is a 'divisible statute,' *i.e.*, a statute which includes multiple, alternative versions of the crime and at least one of the versions matches the elements of the generic offense." 301 Kan. at 1037.

Here, the modified categorical approach applies because the Missouri statute includes multiple, alternative versions of the offense and at least one of the versions matches a comparable Kansas statute. The modified categorical approach allows a sentencing court, without violating *Descamps* and *Apprendi*,

> "to look beyond the elements of the statute and examine a limited class of documents to determine 'which of a statute's alternative elements formed the basis of the defendant's prior conviction.' [Citation omitted.] Such documents include charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial. *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010)." *Dickey*, 301 Kan. at 1037-38.

Here, the district court used the modified categorical approach. At sentencing, the court had certified copies of the convictions and the charging documents in Waid's prior convictions. The court used these documents to compare Waid's Missouri convictions to K.S.A. 2015 Supp. 8-1568(b). The district court concluded that pursuant to the certified copies of the Missouri convictions the offenses were committed in a manner creating substantial risk of physical injury and should therefore by scored as person felonies. The judge concluded:

> "The Missouri statute in question does allow for resisting or interfering an arrest to be done either by an individual or a vehicle.
> "In reading through that statute, I believe the elements there do support the scoring as done by the presentence investigator.

14

"The last paragraph of that statute clearly says it's a Class C felony when it's done creating substantial risk or physical injury or death of a person, and that's exactly what is noted in the certified copies of the Missouri convictions provided by the State.

"So while perhaps it's not identical to our statute, I do think the scoring that was done by the investigators here was appropriate."

In arriving at the conclusion that these prior Missouri crimes should be treated as person felonies, the court did not engage in any fact finding in violation of *Descamps* and *Apprendi* but followed the appropriate modified categorical approach.

Affirmed.